Law Offices of DAVID S. HAGEN
DAVID S. HAGEN - State Bar No. 110588
16830 Ventura Boulevard
Suite 500
Encino, California 91436
(818) 990-4416
Fax: (818) 990-5680
Email: davidhagenlaw@gmail.com

Law Offices of LEON SMALL
LEON SMALL - State Bar No. 67580
16530 Ventura Boulevard
Suite 306
Encino, California 91436
(818) 906-2555
Email: lsattorney2002@yahoo.com

Attorneys for Shlomo Goldberg

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>TUL INVESTMENTS, INC.,<br><br><br><br><br><br><br>                Debtor.<br>_____ | Case No. 1:16-bk-12869-MT<br>Chapter 11<br><br>**STATEMENT OF CREDITOR SHLOMO GOLDBERG RE INITIAL CASE STATUS CONFERENCE AND IN SUPPORT OF DISMISSAL OF CASE**<br><br>Date: December 1, 2016<br>Time: 9:30 a.m.<br>Court: 302 |

   Creditor Shlomo Goldberg ("Goldberg") herein provides this statement in conjunction with the Court's establishment of an initial status conference in this case.

## I.

### FACTUAL BACKGROUND

   Creditor Shlomo Goldberg is the father in law of Yuval Stelmach,

1

("Stelmach") the managing member of the Debtor. Goldberg, who resides in Israel, divorced Yuval's wife's mother in a contentious divorce proceeding. The mother has since passed away. Both Goldberg and his ex-wife are shareholders of the Debtor, each owning a 7.5% interest. The debtor is alleged to "manage" certain investment properties, mostly consisting of one multiple unit commercial building in Brentwood, California commonly known as 101-107 Barrington Way, Brentwood, CA 90049 ("Brentwood Property") for which title is held by an entity known as The Stelmach Family Trust ("Trust"), and to which tenants pay rent to the Trust and/or the Debtor. The debtor, through its principal Stelmach, maintains that the debtor has some "equitable interest" in the property because at one time it held title and transferred that title to the Trust. At his Rule 2004 Exam in the prior chapter 11, Stelmach could not estimate the debtor's "equitable interest" value in the Brentwood property and indicated that since the filing of the chapter 11 he had not sought to obtain an appraisal nor to seek to sell the property. The tenants of the property maintain leases with the Trust, not Tul Investments, and pay their rent to the Trust, not to Tul Investments. From time to time the Trust transfers money into the Debtor's DIP account. Stelmach takes a percentage for himself, and pays some other bills from the remainder.

Goldberg has been litigating with Stelmach, Tul and other entities in which Stelmach controls for years, including REM, LLC, having obtained a judgment from the Los Angeles Superior Court in excess of $500,000 and now, with interest, the obligation approaches $700,000. Stelmach appealed, but earlier this year, the appellate court affirmed the trial court's findings and determination. As

described more fully below, none of the judgment has been paid.

After judgment Goldberg procured Assignment Orders in the State Court in November and December of 2014. Those Orders required, among other things, that certain tenants of Tul pay their monthly rent to Goldberg rather than to Tul. All of the tenants were served a copy of the Order, but none complied.

First, Stelmach filed a prior chapter 11 case for Tul Investments (1:14-bk-15294-MT) in November 2014. That case remained pending while Tul unsuccessfully objected to Goldberg's claim and then twice attempted to file a plan that paid Goldberg substantially less than the full value of his claim, diluted or eliminated his ownership interest in Tul and increased Stelmach's position. After finding that a plan could not be confirmed over Goldberg's objection, this Court dismissed that case with a 180 day bar for refiling. Meanwhile, during the 18 months that the first Tul case was pending, Tul collected rents, did not fully account for those rents and certainly didn't turn over any of those rents to Goldberg.

Upon dismissal Goldberg was free to pursue its collection remedies. Stelmach, though, on behalf of Tul, himself and other entities, has continually taken steps to avoid paying the judgment.

On the eve of the date of the tenants' compliance with the Orders, Tul filed the first bankruptcy proceeding and contended that the rents were estate property and could not be attached. After the first Tul bankruptcy case was dismissed, Goldberg again sought to enforce his Assignment Orders compelling the tenants to pay him. He served all of the tenants with a letter accompanying the Assignment Orders requiring them to pay him the rents now that the bankruptcy

3

case had been dismissed. All of the tenants failed to pay Goldberg rent based upon their advice by Stelmach's counsel, who are also his children, advising them that they did not have to obey the court order and that Stelmach would hold them harmless and indemnify them from any financial consequences resulting from their disobedience.

Again, the rent was not paid. Goldberg applied to the State Court for a finding of contempt against the tenants for willfully disobeying the turnover order. The Court made such a finding in detailed Findings and Orders requiring the tenants to pay the next month's rent, that due on July 1, 2016 to Goldberg's counsel, awarded $3,000 in attorney fees, $5,000 in penalties and an order potentially putting the tenants in jail if they continued to violate the order.

It should be noted, as set forth in the Findings and Order re Contempt that Stelmach again sought to evade responsibility respecting the Assignment Orders by claiming that Tul was not the owner of the subject property and therefore the contempt proceeding and Assignment Orders had no application. Stelmach then claimed that another entity that he controlled, the Stelmach Family Trust, was actually the owner of the Brentwood property and because it was not a judgment debtor, the Assignment Orders had no affect. Such a position was directly opposite the position that he took as the controlling member of Tul Investments, Inc. in its first chapter 11 proceeding wherein Tul claimed that it had an equitable interest, if not a legal interest, in the Brentwood property and treated the rent collections as property of the estate.

Goldberg argued, and the State Court agreed, that Stelmach could not have it both ways. He could not claim in the Tul bankruptcy

proceeding that Tul was the landlord and therefore its bankruptcy proceeding created a stay against Goldberg's attempt to collect the Brentwood rents and then, once the Tul bankruptcy was dismissed, to then claim that the Stelmach Family Trust was the owner and since it was not a party to the judgment, the Turnover Orders were of no affect. The Court found that Stelmach, Tul and the Stelmach Family Trust were estopped from making that argument because they presented conflicting positions in two different courts on the same issue.

The court made that determination on June 30, 2016.

When the tenants failed to pay Goldberg the rents due on July 1, 2016, Goldberg returned to State Court seeking a warrant of attachment, an arrest warrant so as to cause various police agencies to arrest the tenants and bring them before the Court to explain their position at the risk of serving jail time as called for by the Contempt Order.

On the eve of the hearing, REM, LLC, another judgment debtor, filed a chapter 11 proceeding (2:16-bk-18928-WB), claiming that **it**, as the property manager of the Brentwood property, was entitled to protect the rents as property of its estate.

The State Court initially determined that the claims of REM were of no moment inasmuch as REM had no financial interest in those rents as an owner, and at best had an interest in management fees only as collected. Morever, both Goldberg and the Court found highly suspicious that the Contempt Order was entered on June 30, 2016 and the contract appointing REM was the property manager was dated July 1, 2016 and REM's bankruptcy was filed on July 5, 2016.

REM then attempted to remove the state court litigation, post

judgment and post appeal, to the bankruptcy court, which remanded and granted relief from stay to Goldberg to pursue its collection remedies.

The United States Trustee has filed a motion to dismiss the REM case, which Goldberg supports, and which is set for hearing on December 8, 2016 at 10:00 a.m. before Judge Brand.

Running out of avenues to keep Goldberg from collecting rents, the debtor waited for the 180 day refiling prohibition to run and then filed the instant case. The debtor is in no different position than it was when the initial case was dismissed. Unless it agrees to pay Goldberg his entire claim and allow Goldberg to retain his ownership interest, without a significant infusion of capital from Stelmach, he again cannot confirm a plan over Goldberg's objection. Wherein at the time of the filing of the first case Goldberg's claim was subject to an appeal, that appeal has now been resolved in Goldberg's favor and there is no colorable argument that his claim can be disallowed or impaired. As such, Goldberg believes that dismissal of the case is the most appropriate remedy. The debtor had 18 months to propose and confirm a plan that offered equitable treatment to Goldberg's claim, and instead used the time to collect additional rents and perhaps improve the property, without paying Goldberg a dime. Stemlach's conduct should not be sanctioned for even another day.

DATED: November 2, 2016

                              LAW OFFICES OF DAVID S. HAGEN

                              By:
                                DAVID S. HAGEN, Attorney for
                                Shlomo Goldberg

6

**DECLARATION OF LEON SMALL**

I, LEON SMALL, hereby declare and state as follows:

1. I am an attorney at law, duly licensed to practice law in the State of California and before this Court. I have represented Shlomo Goldberg at all stages of the litigation entitled Shlomo Goldberg v. Yuval Stelmach, et al pending in the Los Angeles County Superior Court as case number LC 075563. I have personal knowledge of the facts set forth herein.

2. Creditor Shlomo Goldberg is the father in law of Yuval Stelmach, the managing member of the Debtor. Goldberg, who resides in Israel, divorced Yuval's wife's mother in a contentious divorce proceeding. The mother has since passed away. Both Goldberg and his ex-wife are shareholders of the Debtor, each owning a 7.5% interest. The debtor is alleged to "manage" certain investment properties, mostly consisting of one multiple unit commercial building in Brentwood, California commonly known as 101-107 Barrington Way, Brentwood, CA 90049 ("Brentwood Property") for which title is held by an entity known as The Stelmach Family Trust ("Trust"), and to which tenants pay rent to the Trust and/or the Debtor. The debtor, through its principal Stelmach, maintains that the debtor has some "equitable interest" in the property because at one time it held title and transferred that title to the Trust. At his Rule 2004 Exam in the prior chapter 11, Stelmach could not estimate the debtor's "equitable interest" value in the Brentwood property and indicated that since the filing of the chapter 11 he had not sought to obtain an appraisal nor to seek to sell the property. The tenants of the property maintain leases with the Trust, not Tul Investments, and pay their rent to the

7

Trust, not to Tul Investments. From time to time the Trust transfers money into the Debtor's DIP account. Stelmach takes a percentage for himself, and pays some other bills from the remainder.

3. Goldberg has been litigating with Stelmach, Tul and other entities in which Stelmach controls for years, including REM, LLC, having obtained a judgment from the Los Angeles Superior Court in excess of $500,000 and now, with interest, the obligation approaches $700,000. Stelmach appealed, but earlier this year, the appellate court affirmed the trial court's findings and determination. As described more fully below, none of the judgment has been paid.

4. After judgment Goldberg procured Assignment Orders in the State Court in November and December of 2014. Those Orders required, among other things, that certain tenants of Tul pay their monthly rent to Goldberg rather than to Tul. All of the tenants were served a copy of the Order, but none complied.

5. First, Stelmach filed a prior chapter 11 case for Tul Investments (1:14-bk-15294-MT) in November 2014. That case remained pending while Tul unsuccessfully objected to Goldberg's claim and then twice attempted to file a plan that paid Goldberg substantially less than the full value of his claim, diluted or eliminated his ownership interest in Tul and increased Stelmach's position. After finding that a plan could not be confirmed over Goldberg's objection, this Court dismissed that case with a 180 day bar for refiling. Meanwhile, during the 18 months that the first Tul case was pending, Tul collected rents, did not fully account for those rents and certainly didn't turn over any of those rents to Goldberg.

6. Upon dismissal of the first Tul case Goldberg was free to

8

pursue its collection remedies. Stelmach, though, on behalf of Tul, himself and other entities, has continually taken steps to avoid paying the judgment. On the eve of the date of the tenants' compliance with the Orders, Tul filed the first bankruptcy proceeding and contended that the rents were estate property and could not be attached. After the first Tul bankruptcy case was dismissed, Goldberg again sought to enforce his Assignment Orders compelling the tenants to pay him. He served all of the tenants with a letter accompanying the Assignment Orders requiring them to pay him the rents now that the bankruptcy case had been dismissed. All of the tenants failed to pay Goldberg rent based upon their advice by Stelmach's counsel, who are also his children, advising them that they did not have to obey the court order and that Stelmach would hold them harmless and indemnify them from any financial consequences resulting from their disobedience.

Again, the rent was not paid. Goldberg applied to the State Court for a finding of contempt against the tenants for willfully disobeying the turnover order. The Court made such a finding in detailed Findings and Orders requiring the tenants to pay the next month's rent, that due on July 1, 2016 to Goldberg's counsel, awarded $3,000 in attorney fees, $5,000 in penalties and an order potentially putting the tenants in jail if they continued to violate the order.

7.  It should be noted, as set forth in the Findings and Order re Contempt that Stelmach again sought to evade responsibility respecting the Assignment Orders by claiming that Tul was not the owner of the subject property and therefore the contempt proceeding and Assignment Orders had no application. Stelmach then claimed that

another entity that he controlled, the Stelmach Family Trust, was actually the owner of the Brentwood property and because it was not a judgment debtor, the Assignment Orders had no affect. Such a position was directly opposite the position that he took as the controlling member of Tul Investments, Inc. in its first chapter 11 proceeding wherein Tul claimed that it had an equitable interest, if not a legal interest, in the Brentwood property and treated the rent collections as property of the estate.

8. Goldberg argued, and the State Court agreed, that Stelmach could not have it both ways. He could not claim in the Tul bankruptcy proceeding that Tul was the landlord and therefore its bankruptcy proceeding created a stay against Goldberg's attempt to collect the Brentwood rents and then, once the Tul bankruptcy was dismissed, to then claim that the Stelmach Family Trust was the owner and since it was not a party to the judgment, the Turnover Orders were of no affect. The Court found that Stelmach, Tul and the Stelmach Family Trust were estopped from making that argument because they presented conflicting positions in two different courts on the same issue.

9. The court made that determination on June 30, 2016.

10. When the tenants failed to pay Goldberg the rents due on July 1, 2016, Goldberg returned to State Court seeking a warrant of attachment, an arrest warrant so as to cause various police agencies to arrest the tenants and bring them before the Court to explain their position at the risk of serving jail time as called for by the Contempt Order.

11. On the eve of the hearing, REM, LLC, another judgment debtor, filed a chapter 11 proceeding (2:16-bk-18928-WB), claiming

that **it**, as the property manager of the Brentwood property, was entitled to protect the rents as property of its estate.

12. The State Court initially determined that the claims of REM were of no moment inasmuch as REM had no financial interest in those rents as an owner, and at best had an interest in management fees only as collected. Morever, both Goldberg and the Court found highly suspicious that the Contempt Order was entered on June 30, 2016 and the contract appointing REM was the property manager was dated July 1, 2016 and REM's bankruptcy was filed on July 5, 2016.

13. REM then attempted to remove the state court litigation, post judgment and post appeal, to the bankruptcy court, which remanded and granted relief from stay to Goldberg to pursue its collection remedies.

14. The United States Trustee has filed a motion to dismiss the REM case, which Goldberg supports, and which is set for hearing on December 8, 2016 at 10:00 a.m. before Judge Brand.

15. Running out of avenues to keep Goldberg from collecting rents, the debtor waited for the 180 day refiling prohibition to run and then filed the instant case. The debtor is in no different position than it was when the initial case was dismissed. Unless it agrees to pay Goldberg his entire claim and allow Goldberg to retain his ownership interest, without a significant infusion of capital from Stelmach, he again cannot confirm a plan over Goldberg's objection. Wherein at the time of the filing of the first case Goldberg's claim was subject to an appeal, that appeal has now been resolved in Goldberg's favor and there is no colorable argument that his claim can be disallowed or impaired. As such, Goldberg believes that dismissal

of the case is the most appropriate remedy. The debtor had 18 months to propose and confirm a plan that offered equitable treatment to Goldberg's claim, and instead used the time to collect additional rents and perhaps improve the property, without paying Goldberg a dime. Stemlach's conduct should not be sanctioned for even another day.

    I declare under penalty of perjury that the foregoing statements are true and correct, and I could, if called upon, competently testify thereto.

    DATED: November 2, 2016

LEON SMALL

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16830 Ventura Blvd., Suite 500, Encino, CA 91436-1795

A true and correct copy of the foregoing document entitled (*specify*): STATEMENT OF CREDITOR SHLOMO GOLDBERG RE INITIAL CASE STATUS CONFERENCE AND IN SUPPORT OF DISMISSAL OF CASE
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/02/2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Matthew Abbasi (Counsel for DIP)        matthew@malawgroup.com
Katherine Bunker (UST):                 kate.bunker@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/02/2016 | DAVID S. HAGEN | /S/ DAVID S. HAGEN |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**