1  Law Offices of DAVID S. HAGEN
   DAVID S. HAGEN - State Bar No. 110588
2  16830 Ventura Boulevard
   Suite 500
3  Encino, California 91436
   (818) 990-4416
4  Fax: (818) 990-5680
   Email: davidhagenlaw@gmail.com
5
   Law Offices of LEON SMALL
6  LEON SMALL - State Bar No. 67580
   16530 Ventura Boulevard
7  Suite 306
   Encino, California 91436
8  (818) 906-2555
   Email: lsattorney2002@yahoo.com
9
   Attorney for Shlomo Goldberg
10

11                 **UNITED STATES BANKRUPTCY COURT**

12                 **CENTRAL DISTRICT OF CALIFORNIA**

13                 **SAN FERNANDO VALLEY DIVISION**

14  In re:                        )   Case No. 1:16-bk-12869-MT
                                  )   Chapter 11
15  TUL INVESTMENTS, INC.,        )
                                  )   **OPPOSITION     OF     SHLOMO**
16                                )   **GOLDBERG   TO   ADEQUACY   OF**
                                  )   **DEBTOR'S       DISCLOSURE**
17                                )   **STATEMENT**
                                  )
18                                )   Date: March 22, 2017
                                  )   Time: 9:30 a.m.
19                                )   Court: 302
                     Debtor.      )
20  _____ )

21

22       Creditor Shlomo Goldberg ("Goldberg") herein objects to the

23  adequacy of the Debtor's Disclosure Statement ("DS") as not containing

24  "adequate information".  In addition, Goldberg believes that the Plan

25  (although not yet filed but details set out in the DS) is patently

26  unconfirmable as the Plan will impair Goldberg's and other unsecured

27  creditors while the liquidation analysis appears to show that if the

28                                 1

1  case were converted to chapter 7, there would be sufficient funds to
2  pay all claims in full and leave something for the equity interests.

3  **FACTUAL BACKGROUND**

4  Creditor Shlomo Goldberg is the father in law of Yuval Stemlach,
5  the managing member of the Debtor.  Goldberg, who resides in Israel,
6  divorced Yuval's wife's mother in a contentious divorce proceeding.
7  The mother, Lea Golberg, has since passed away.  Both Goldberg and his
8  late wife are shareholders of the Debtor, each owning a 7.5% interest.
9  The debtor, through Stemlach, is alleged to "manage" certain
10 investment properties, primarily consisting of one multiple unit
11 commercial building in Brentwood, California commonly known as 101-107
12 Barrington Way, Brentwood, CA 90049 ("Brentwood Property") for which
13 title is held by an entity known as The Stemlach Family Trust
14 ("Trust"), and to which tenants pay rent to the Trust.  The debtor,
15 through its principal Stemlach, maintains that the debtor has an
16 "equitable interest" in the property because at one time it held title
17 and transferred that title to the Trust without consideration.  In his
18 DS, Debtor estimates the value of the Brentwood property, by way of
19 Brokers Opinion of Value at $2,100,000 without encumbrances.  The
20 tenants of the property maintain leases with the Trust, not Tul
21 Investments, and pay their rent to the Trust, not to Tul Investments
22 through another Stelmach entity called REM.  From time to time the
23 Trust transfers money into the Debtor's DIP account. Stemlach takes
24 10% for himself or for REM, as a management fee, and pays some other
25 bills, not necessarily all Tul Investment bills from the remainder.

26 Goldberg has been litigating with Stemlach, Tul and other
27 entities in which Stemlach controls for years, having obtained a

28                                    2

judgment from the Los Angeles Superior Court and has filed a timely claim in this bankruptcy proceeding in the amount of $547,022.26 on November 28, 2016. There are two other claims filed of note, both by contractors whose claim indicates that they performed improvements on the Brentwood property owned by the Trust, but the invoices are billed to the Debtor. No objections to those claims have been filed, even though it is clear that the benefit of such improvements were made to property owned by the Trust, not the debtor.

Further, two new claims have arisen, one in the amount of $1,000,000 filed by Gil Naor, who is also the principal of one of the contractor claimants, Gil's Electrical Services, and by Assaf Naor, in the amount of $600,000. Neither of the Naor's claims were described in the debtor's prior bankruptcy case (1:14-bk-15249-MT), are described in the DS, and neither of the claims are supported by any evidentiary support, including how the claim arose, when it arose, who got the benefit of funds invested, if any, and what documentation exists supporting the claim. The debtor has not yet filed objections to the claims and it appears to Goldberg that they may have been manufactured to create votes of a dissenting class to assist in confirming a cram down plan.

The filing of this proceeding was apparently the latest in Tul's attempt to evade the pending execution of a levy by Goldberg. Stemlach himself is a judgment debtor on that obligation, and decided to file a second chapter 11 for Tul rather than either post a bond on its appeal of the Goldberg judgment or make arrangements to pay the judgment. Tul's first chapter 11 filing (1:14-bk-15294-MT) was dismissed by the Court when it was clear that the debtor could not

3

formulate a connfirmable plan without paying Goldberg's claim in full. Stelmach then filed another case for REM, the ostensible management company, alleging that it held some interest in the debtor's rents to create a further impediment to Goldberg's levy.  That case was also dismissed, followed by the instant Tul case.

On December 1, 2016, this Court held its Initial Status Conference in this case.  At that time, the Court ordered Tul to file both a Plan and Disclosure Statement (in the prior case it filed its Disclosure Statement and then an Amended Disclosure Statement without ever filing its Plan) by January 20, 2017.  When the Debtor failed to do so, Goldberg filed a motion to dismiss the case which is presently set for hearing on March 1, 2017 at 9:30.

This is another attempt by Tul at providing a Disclosure Statement in anticipation of filing a Reorganization Plan which has heretofore not been filed.  The Disclosure Statement describes a plan in which those several creditors who allegedly provided services to one or more of the debtor's buildings are treated as Class 1 creditors are paid 50% of their allowable claims.  The two unsupported and newly created Naor claims are classified as Class 2 and also paid 50% of their allowable claims.  Goldberg's unsecured claim is classified separately as Class 3 and also paid 50%.  The claim of East West Bank is separately classified as Class 4 and also paid 50%.  All of the class 1 through 4 claims allegedly hold unsecured claims but are separately classified, primarily, it is presumed, to create a class of impaired claims that votes in favor of the plan.

The treatment of East West Bank's claim is interesting.  East West presumably holds an unsecured claim.  In the prior Tul case, they

4

did not file a proof of claim.  The DS indicates that the claim is $1,369,000 but Exhibit C to the Disclosure Statement indicates that East West may have made a loan to Tul Reseda, LP back in 2008, not to Tul Investments.  Nevertheless, Tul Investments has been making monthly payments of principal and interest to East West Bank, from its DIP account, in the amount of $9,591 per month, seemingly paying an unsecured debt of another entity from assets of the estate without court permission.  It is unclear how East West Bank would be entitled to a claim at all if it lent money to Tul Reseda.

### TREATMENT OF GOLDBERG'S CLAIMS IN PLAN

Goldberg's judgment claim of $547,022.26 is separately treated in Class 3.  The plan purports to pay Goldberg 50% of his allowed Class 3 claim.

Goldberg's equity claim of 7.5% of the Debtor's shares is treated in Class 5 and leaves it unimpaired.

### INFORMATION REQUIRED IN A DISCLOSURE STATEMENT

A disclosure statement must contain adequate information for creditors and shareholders to make an informed judgment about a plan of reorganization.  Section 1125(b) of the Bankruptcy Code provides the threshold level of information that must be included in a disclosure statement:

"An acceptance or rejection of the plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such solicitation, <u>unless</u>, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.  11 U.S.C. Section 1125(b).

"Adequate information" is defined under 11 U.S.C. Section 1125(a)(1) as "information of a kind, and in sufficient detail, as far

5

is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ".

Generally, bankruptcy courts exercise broad discretion when deciding whether to approve or reject a disclosure statement.   In making such determinations, courts often look at whether the disclosure statement contains the following types of information:

1.   The circumstances that gave rise to the filing of the bankruptcy petition;

2.   A discussion of assets available and their value;

3.   A summary of what the debtor anticipates going forward;

4.   Where the information in the disclosure statement came from;

5.   A disclaimer stating that no statements or information regarding the debtor, its assets or securities are authorized, other than those included in the disclosure statement;

6.   The debtor's condition during its bankruptcy;

7.   Claim information;

8.   An analysis showing what creditors would receive from the debtor were it liquidated under chapter 7;

9.   The account and valuation methods used in the disclosure statement;

10. Information regarding the debtor's management going forward;

11. A summary of the plan;

12. A summary of the administrative expenses, including bankruptcy professional fees;

13. A review of the debtor's accounts receivables;

14. Financial information necessary to allow a creditor to decide whether to approve or reject the plan;

15. Information regarding the risks being taken by the creditors;

16. The amount expected for recovery through avoidance actions;

17. A discussion of non bankruptcy litigation;

18. Tax consequences of the plan; and

19. The debtor's relationship with affiliates.

See In re Scioto Valley Mortgage Co., 88 B.R. 168, 170 (Bankr. S.D. Ohio, 1988).

**LIQUIDATION ANALYSIS**

Among the relevant factors above as applied to this case is the valuation by the Debtor of its assets. The debtor has obtained a broker's opinion of value ("BOV") of the various properties that the debtor owns or has an interest in. The BOV does not indicate whether the broker actually visited the various properties or how he determined the respective values. However, taken at face value the debtor's interest in the various properties indicate that it has sufficient equity to pay creditors in full as follows:

| | | |
|---|---|---|
| Barrington Walk property | 100% | $2,100,000 |
| Reseda property | 50% | 1,725,000 |
| Western Ave property | 50% | 2,500,000 |
| Chatsworth property | 7% | 700,000 |
| | | 7,025,000 |

Thus, there is sufficient equity, in a liquidation scenario, to provide all unsecured creditors payment in full, and further provide

1 a return to equity holders.

2    Further, the plan purports that the Debtor will  borrow funds to

3 satisfy claims of creditors (D.S., page 17, line 24).   The Debtor,

4 however, doesn't own the property, title is held by Stemplach Trust.

5 The Disclosure Statement describes a plan that provides that the

6 "Debtor shall obtain financing secured by the Debtor's property to

7 fund the Debtor's (sic) at the Plan's Effective Date." No details are

8 provided as to who the potential lender might be and on what terms it

9 would lend to a debtor that owns no real property in its own name.

10                **FINANCIAL DISCLOSURE**

11    Exhibit N to the DS appears to be an cash flow statement for the

12 Brentwood property through September 26, 2015, almost 18 months ago.

13 It does not indicate who might have prepared the statement, on which

14 assumptions and facts were used to prepare the statement, whether the

15 statement was prepared in accordance with generally accepted

16 accounting principles or on some other basis.   In fact it appears to

17 be merely an old accounting history of rents in and expenses out.

18    Thus, the financial information presented is woefully inadequate

19 and outdated to allow a hypothetical investor to decide whether to

20 accept or reject the plan.

21    Further, although the DS purports to describe a plan that will

22 pay Classes 1-4 creditors out of future income, there is no timetable

23 set by which creditors can expect to receive payment, and equally as

24 important, there is no attached projection showing how and when

25 creditors will be paid including a prospective income and expense

26 analysis to indicate that the debtor, will, in fact, be able to

27 perform what it says it can.

28                        8

**TREATMENT OF EAST WEST BANK**

As noted above, the DS provides that East West Bank, who has an unsecured claim of perhaps $1,364,000, will be paid by continuing to make payments pursuant to the contract. East West Bank has not filed a claim in the proceeding and the deadline to file such claims is set to expire. In fact, the Debtor's monthly operating reports show that East West Bank has continued to be paid on account of its unsecured claim almost $10,000 monthly throughout the pendency of this case. The DS does not contain any information as to how East West Bank has a claim against the Debtor, when the loan may have been made, what the proceeds were used for, whether there are any other parties obligated on the loan to East West Bank, whether any third parties are or have made payments on the loan. Further, it would appear, at Exhibit C to the DS, that the loan was made to another Tul entity, Tul Reseda, but that Tul Investments owners and creditors are paying the debt. Further, separately classifying East West's claim would appear to be a way to carve out a potential consenting class of unsecured creditors, unfairly discriminating against Goldberg and the Class 1 unsecured creditors who are being paid less than 100% of their claims.

**CONFIRMATION ISSUES**

While issues regarding feasibility are usually left for confirmation, it appears that this plan is patently unconfirmable because:

1.  It unfairly classifies unsecured creditors separately, even though treating them similarly, apparently to create a consenting class of impaired claims and thus is discriminatory..

2.  The plan cannot be confirmed because it does not meet the

1    best interests of creditors test pursuant to Section 1129(a)(7). That

2    section provides that the plan proponent must demonstrate that either

3    each member of impaired classes has either accepted the plan or will

4    receive as much if the debtor were liquidated in a chapter 7. Here,

5    if liquidated, Golberg's Class 3 claim would be paid in full. The

6    claims of the Class 1 unsecured creditors would be paid in full.

7    Goldberg's shareholder claim would also have residual value after all

8    of the Classes 1, 2, 3 and 4 claims were paid in full. Since the plan

9    provides only partial payment to Class 1, 2, 3 and 4 creditors, the

10   best interest test cannot be satisfied. Goldberg will not consent to

11   his treatment under the plan and thus the best interest test applies.

12       3.  The plan cannot be confirmed pursuant to Section 1129(a)(8)

13   because the plan proponent must show that each class has either

14   accepted the plan or is unimpaired. Classes 1 through 4 creditor

15   claims are impaired under the plan as the plan provides only 50% to

16   those  unsecured claims, and Goldberg will not consent to confirmation

17   of the plan. Thus, without Goldberg's consent, the proponent must

18   "cram down" Goldberg. Since the liquidation value, as noted above,

19   would pay Goldberg's Class 3 claim in full, the plan proponent cannot

20   satisfy this test.

21                              **CONCLUSION**

22       Based upon the foregoing, the DS is inadequate in that is not

23   supported by adequate information as the case law has defined that

24   requirement. Further, the plan discriminates unfairly the claim of

25   Goldberg vis a vis the other creditors by separately classifying

26   various unsecured creditors to carve out a potential impaired class

27   that would vote for the plan. Finally, and maybe most importantly,

28                                   10

1   the plan cannot be confirmed pursuant to Sections 1129(a)(7) or (a)(8)

2   because it does not provide Goldberg at least as much as he would

3   receive in a hypothetical chapter 7, nor can his claims be "crammed

4   down" since his claim would be paid in full under a liquidation and

5   the other owners are not putting any new value into the reorganized

6   enterprise in order to adjust their ownership interests at Goldberg's

7   expense.   For all of the foregoing reasons, the Disclosure Statement

8   should not be approved.    Although unusual, because the plan cannot

9   be confirmed as presently contemplated, the case should be converted

10  to Chapter 7 or dismissed with a bar against refiling.    This is the

11  debtor's second case and third attempt to remedy the deficiencies that

12  were readily apparent in its first and amended Disclosure Statements

13  filed (again without filing a concurrent Plan) in the prior case.   It

14  is clear that Mr. Stelmach will not propose a plan that will pay

15  Goldberg in full, and as such no plan can be confirmed.    If, by the

16  date of this hearing, the Court has not already dismissed the case,

17  the best alternative is conversion to chapter 7.    A trustee will

18  liquidate the estate's interest in the various properties, pay the

19  valid creditors claims and distribute any remainder to the owners.

20      DATED: February 7, 2017

21                              LAW OFFICES OF DAVID S. HAGEN

22

23                              By: /s/ DAVID S. HAGEN
                                    DAVID S. HAGEN, Attorney for
24                                  Shlomo Goldberg

25

26

27

28                              11

1  Law Offices of DAVID S. HAGEN
   DAVID S. HAGEN - State Bar No. 110588
2  16830 Ventura Boulevard
   Suite 500
3  Encino, California 91436
   (818) 990-4416
4  Fax: (818) 990-5680
   Email: davidhagenlaw@gmail.com
5
   Law Offices of LEON SMALL
6  LEON SMALL - State Bar No. 67580
   16530 Ventura Boulevard
7  Suite 306
   Encino, California 91436
8  (818) 906-2555
   Email: lsattorney2002@yahoo.com
9
   Attorney for Shlomo Goldberg
10

11              **UNITED STATES BANKRUPTCY COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13              **SAN FERNANDO VALLEY DIVISION**

14  In re:                          )   Case No. 1:14-bk-15294-MT
                                     )   Chapter 11
15  TUL INVESTMENTS, INC.,           )
                                     )   **DECLARATION OF DAVID S.**
16                                   )   **HAGEN IN SUPPORT OF**
                                     )   **OPPOSITION TO ADEQUACY OF**
17                                   )   **DISCLSOURE STATEMENT**
                                     )
18                                   )   DATE: March 22, 2017
                                     )   Time: 9:30 a.m.
19                                   )   Courtroom: 302
                   Debtor.           )
20  _____ )

21

22       I, DAVID S. HAGEN, hereby declare and state as follows:

23       1.  I am an attorney at law duly licensed to practice law in this

24  Court and in the State of California.  I have personal knowledge of

25  the facts set forth herein and can competently testify to them.

26       2.  I represent Shlomo Goldberg ("Goldberg") in this case.  Mr.

27  Goldberg owns 7.5% of the stock of the debtor and is a creditor of the

28                                    1

debtor by virtue of a judgment that he obtained against the Debtor and other parties in Los Angeles Superior Court.    Goldberg has filed a claim in this proceeding.    Goldberg is the father-in-law of the principal of the debtor Yuval Stelmach.

3. Goldberg and Stelmach have a long history of litigation, and this chapter 11 proceeding, the second Tul chapter 11 filed, is just a continuation of Mr. Stelmach's attempt not to pay Goldberg what he is owed.

4.    The debtor alleges that it has an equitable interest in several parcels of valuable Southern California property, particularly a commercial building in Brentwood commonly known as 101-107 Barrington Way, Brentwood, CA 90049 but title to that property, formerly held by the Debtor, now is held by the Stelmach Family Trust to which tenants pay the rent through a management company, REM, formed after the prior Tul bankruptcy case was dismissed and on the eve of Goldberg obtaining a rent turnover order against the Brentwood tenants.    REM then filed chapter 11 contending that it had an ownership interest in the rents, although it was just allegedly collecting rents.    Judge Brand dismissed the REM case and then the debtor filed this, the second of the Tul bankruptcy cases.

5.    The court held an initial status conference and ordered that the debtor file both its plan and disclosure statement by January 20, 2017 and continued the status conference to March 22.  The debtor did not file its Disclosure Statement timely, and did not file a Plan at all (in the prior Tul case, the debtor similarly filed a disclosure statement without a plan, which was rejected by the Court as not containing adequate information and resulting in the dismissal of the

2

first Tul case).  Goldberg has filed a motion to dismiss the instant case which is set for hearing on March 1, 2017.

6.  I have reviewed the debtor's Disclosure Statement filed in this case and have several significant concerns.  First, there are two claims filed by what appear to be related parties, Gil Naor and Assaf Naor in the amounts of $1,000,000 and $600,000, respectively.  A review of the claims filed by these parties reveal that the claims are not accompanied by any evidence of debt but are merely the claim form alone.  Neither of these claims were mentioned in Tul's prior bankruptcy case, and thus one has to assume that if they are legitimate, they are for new monies borrowed, but there is no narrative in the Disclosure Statement that would indicate that the debtor has recently borrowed money, or on what terms or what the funds might have been used for.  Thus, I seriously question their bona fides.

7.  In addition the Debtor describes a transaction with East West Bank and treats it as an unsecured claim.  It appears from the description in the Disclosure Statement that East West may have made a loan to another Tul entity, Tul Reseda, not the debtor, back in 2008 yet the monthly operating reports being filed by the Debtor indicate that the debtor is repaying this loan from the DIP account in the amount of $9,591 per month.  This would appear inappropriate on several different levels.  First, it does not appear to be an obligation of the debtor, but of another Tul entity.  Second, the post petition payment would clearly be made on account of a pre-petition obligation and the debtor has no sought authority to pay such a debt. Further, I note that in the first Tul bankruptcy, although the Court

3

1 | set a claims bar date, East West did not file a claim, and as of this
2 | date, has not filed a claim in this case.

3 |     8.   A disclosure statement is supposed to describe a plan and
4 | that plan must treat impaired classes better than they would receive
5 | in a hypothetical liquidation.  The Goldberg claim is impaired, as it
6 | is being provided 50% of its allowed amount.  The Disclosure Statement
7 | is accompanied by a broker's opinion of value of the Brentwood
8 | property and the other properties in which the debtor owns an
9 | interest.  The properties are valued (the debtor's partial interests
10 | are taken into consideration here) as follows:

| | | |
|---|---|---|
| Barrington Walk (Brentwood) | 100% | 2,100,000 |
| Reseda | 50% | 1,725,000 |
| Western Ave | 50% | 2,500,000 |
| Chatsworth | 7% | <u>700,000</u> |
| | | 7,025,000 |

16 | Thus, it would appear that there would be more than enough value to
17 | pay impaired claims in full, including Goldberg's, in a forced
18 | liquidation even assuming that the two Naor claims noted above are
19 | valid, which is questionable.

20 |     9.   Further, the Disclosure Statement does not describe how and
21 | when the Goldberg claim would be paid if the plan were somehow to be
22 | confirmed.    There are no payment terms, in other words, at
23 | confirmation, within 2 years, within 5 years, within 20 years?
24 | Neither does the Disclosure Statement provide any interest rate on the
25 | unpaid balance, nor does the Disclosure Statement contain any sort of
26 | projection to enable those impaired creditors to understand how the
27 | debtor is treating them and how they are intended to be paid.  For all

4

1  of those reasons, I do not believe that the Disclosure Statement

2  describes the so far non existent plan, should be denied and the case

3  dismissed or at worst, converted to chapter 7.

4      I declare under penalty of perjury that the foregoing statements

5  are true and correct, and I could, if called upon, competently testify

6  thereto.

7      DATED: February 7, 2017

8

9                        /s/ DAVID S. HAGEN

10                        DAVID S. HAGEN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 16830 Ventura Blvd., Suite 500, Encino, CA 91436-1795

A true and correct copy of the foregoing document entitled (*specify*): OPPOSITION OF SHLOMO GOLDBERG TO ADEQUACY OF DEBTOR'S DISCLOSURE STATEMENT; DECLARATION OF DAVID S. HAGEN IN SUPPORT _____ _____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 02/07/2016____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Katherine Bunker (UST-WH):                    kate.bunker@usdoj.gov
Matthew Abbasi (Attorney for DIP)             matthew@malawgroup.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __02/07/2017____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon Maureen Tighe, United States Bankruptcy Court, 21041 Burbank Blvd., Woodland Hills, CA 91367

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/07/2017 | DAVID S. HAGEN | /S/ DAVID S. HAGEN |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.