MATTHEW ABBASI, ESQ.; SBN 215030
**ABBASI LAW CORPORATION**
8889 WEST OLYMPIC BLVD, SUITE 240
BEVERLY HILLS, CALIFORNIA 90211
TEL:(310) 358-9341
FAX: (888) 709-5448
EMAIL: matthew@malawgroup.com

ATTORNEYS FOR DEBTOR,
TUL INVESTMENTS, INC.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO DIVISION

| | |
|---|---|
| IN RE:<br><br><br><br>TUL INVESTMENTS, INC.<br><br>DEBTOR. | CASE NO.: 1:16-bk-12869-MT<br><br>CHAPTER 11 PROCEEDING<br><br>DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH<br><br>HEARING:<br><br>Date: April 5, 2017<br>Time: 9:30 a.m.<br>Courtroom: 302 |

TO THE UNITED STATES BANKRUPTCY JUDGE; OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS, AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT, the Debtor and the Debtor-in-Possession in the above-captioned case, TUL INVESTMENTS, INC. (hereinafter the "Debtor"), hereby files the following Opposition to Movant, SHLOMO GOLDBERG (hereinafter "Goldberg" and/or the "Movant"), Motion for an order pursuant to 11 U.S.C. § 1112(b) dismissing the instant Chapter 11 bankruptcy case (hereinafter the "Motion"):

### MEMORANDUM OF POINTS AND AUTHORITIES

#### I.

### SUMMARY OF FACTS

The Debtor filed the herein Bankruptcy case by filing a petition under Chapter 11 of the U.S. Bankruptcy Code (the "Code") on **October 3, 2016**. The Debtor is a real estate investment company that owns and manages its interest in other entities. Since the filing of this case, the Debtor has fully complied with all of the requirements of the United States Trustee's Office (the "UST"). Further, the Debtor's President (Yuval Stelmach) attended the 341 (a) Meeting of Creditors which was held and concluded on **November 8, 2016**. The Debtor has filed all required Monthly Operating Reports.

The Debtor filed its Disclosure Statement and Plan on **February 24, 2017** which is set for a Hearing Re: Adequacy of Debtor's Disclosure Statement Describing Chapter 11 Plan of Reorganization on **April 5, 2017**. On **March 10, 2017** the UST filed an Objection to the Debtor's Disclosure Statement. In order to resolve, the UST's objection, the Debtor will be filing an Amended Disclosure Statement and Plan by *March 27, 2017*.

As evidenced and explained in the Disclosure Statement and Plan, the Debtor has the ability to reorganize itself because it has assets and income. In fact, the Debtor has had positive income from each of its holdings in 2015 and 2016 and has a net income of at least $20,000 per month. Furthermore, the entities that own the Debtor's real property have undertaken an extensive effort to lower utility costs, build-out costs, landscaping costs, and other savings measures to increase profitability. As such, the Debtor's income for 2016 has greatly increased while its expenses have decreased since 2015. Finally, the Debtor has about $80,000 in cash on hand; have access to a $250,000 Line of Credit; and have a pending Mediation to finalize the dissolution of GW. Therefore, the Debtor's has funds to formulate a Plan and its Plan is fully in line with its financial capacity. As such, the Debtor's Plan is feasible and, as explained in the Disclosure Statement and herein, in the best interest of the all creditors.

In sum, the financial projections and income documentation provided with the Debtor's Disclosure Statement demonstrate the Debtor can pay its bills as they come due plus the money

1   needed to make Plan payments. Overall, the improving real estate market will allow for the

2   resetting of leases and the plan upgrades to the properties will lower costs. The combination of

3   lowered costs and increased income will help fund the Debtor's Plan.

4       As set forth herein, the Debtor has no secured creditors and no creditor has a security

5   claim on any of the Debtor's income. However, there are pending disputes between two of the

6   owners of the Debtor (Mr. Yuval Stelmach and Mr. Shlomo Goldberg) which have caused over a

7   decade of litigation in the United States and Israel. As stated in the Debtor's Disclosure

8   Statement, the Debtor does not seek to resolve any of the aforementioned ownership disputes in

9   its Plan. Instead, in its soon to be submitted Plan the Debtor seeks to reorganize and fully repay

10  the Debtor's debts. As it stands, the following are Debtor's claimed/listed creditors: a judgment

11  obtained by Creditor/Owner Shlomo Goldberg ("Goldberg"); a line of credit owed to Creditor,

12  East West Bank ("EWB"); claims for money from Creditors Gil Naor ("GN") and Assaf Naor

13  ("AN"); and claims for money from Creditors, Gil's Electrical, Service AZ Air-conditioning &

14  Heating, and Pacific Builders.

15      The following shall more fully describe the Debtor's assets, Debtor's ownership disputes,

16  and the Debtor's Creditors (with Plan treatment):

17      1.   <u>Debtor's Assets</u>:

18  The Debtor has the following corporate ownerships which are not in dispute:

19      ▪  50% of a company called GOLDEN WEST REAL ESTATE, LLC ("GW"); and
        ▪  50% of a company called TUL ANTHONY, LTD ("Tul Anthony").

20  The above-cited companies own the following real properties:

21      ▪  GW owns 100% of a commercial property located at 1880 S. Western Ave., Los
22         Angeles California ("Western Property").

23      ▪  Tul Anthony owns 14% of an entity named BALBOA PLAZA, LLC ("BP") which
           owns a commercial property located at 17050 Chatsworth Street, Grenada Hills,
24         California ("Chatsworth Property").

25      ▪  Tul Anthony owns 100% of an entity named TUL RESEDA, LP ("Tul Reseda")
           which owns a commercial property located at 7126 Reseda Blvd., Reseda,
26         California ("Reseda Property").

27      The Debtor does not directly own any real property but the Debtor is the 100% equitable

28  owner of a commercial property located at 101-107 Barrington Way, Brentwood, California (the

DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH

"Brentwood Property"). The Brentwood Property is currently legally owned by the <u>Stelmach</u> <u>Family 2002 Living Trust</u> ("SFT") but the true and correct owner of this property has always been the Debtor.

As set forth in the Declaration of Yuval Stelmach, the Brentwood Property was purchased on or about **October 31, 1995** by the Debtor and was owned free and clear by the Debtor until 2003. Thereafter, on or about **December 16, 2003,** the Debtor conveyed title of this property to the SFT in order to qualify for a loan. This transfer was needed to obtain a loan because the Debtor did not have sufficient credit to obtain a loan on its own. Consequently, this property had to be transferred into SFT and the loan had to be personally guarantee by Yuval and Tally Stelmach. This loan has since been paid-off but due to pending litigation this property has not been re-conveyed to the Debtor before the filing of the Petition. *See Declaration of Yuval Stelmach and Exhibit "A" and "B."*

The Debtor does not own any other real property, corporate, or any other assets.

2.    <u>Debtor's Owners:</u>

As of the date of this Disclosure Statement, the Debtor has an two (2) unresolved ownership disputes which the Debtor does not seek to resolve via its Plan. Based on the books and records of the Debtor, the following is a listing of the Debtor's disputed ownership:

- Shlomo Goldberg ("Goldberg") owns 7.5% of the Debtor.
- Estate of Lea Goldberg (Shlomo Goldberg's deceased wife) owns 7.5% of the Debtor.
- Yuval and Tally Stelmach ("Stelmach") own the remaining 85% of the Debtor.

As explained in the Declaration of Yuval Stelmach, the Estate of Lea Goldberg is the subject of a Will contest in Israel. The Debtor Plan's shall not determine the ownership of the 7.5% owned by Lea Goldberg. Instead, the Debtor's shall allow the Will contest proceedings determine Lea Goldberg's ownership in the Debtor.

The main factor leading up to the herein filing was the pending execution of a levy by equity owner and judgment-creditor Mr. Goldberg. This levy relates to a June 26, 2013 State Court Judgment ("State Court Judgment") which arises out of a lawsuit entitled <u>Shlomo Goldberg</u> <u>v. Yuval Stelmach et al.</u> with a Trial Court Case No. of LC075563 ("State Court Action"). As explained below, the State Court Judgment was appealed to Court of Appeal under Case No.

---

DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH

B250524 (hereinafter "Appeal"). However, the Appeal was denied and the Judgment was upheld. Therefore, the Debtor seeks to administer the payment of this debt via its Plan. The State Court Judgment is against the Debtor, REM, LLC, and Yuval Stelmach, joint and severable.

On November 28, 2016, Mr. Goldberg filed Proof of Claim No. 2 ("POC-2") for the stated sum of **$547,022.26** ("POC Sum").  As set forth in the Declaration of Yuval Stelmach, the Debtor maintains that the State Court Judgment is in reality an equity claim disguised as a Creditor claim. The Debtor bases the above contention on the fact that the State Court Judgment does not involve or arise out of Estate property. Further, this judgment makes no finding of any malfeasance by Mr. Stelmach involving this Estate. Instead, this judgment relates exclusively to disputed disbursements made to the Debtor from an unrelated interpleader judgment involving the sale of Non-Estate. The Debtor maintains that the above-cited disbursement was supposed to buy-out Mr. Goldberg's interests but the proceeds were instead used to pay for legal fees and costs incurred in the past 12 years of litigation between Mr. Goldberg and Mr. Stelmach. Therefore, the Debtor maintains that the State Court Judgment amounts to an equity claim. However, despite the above the Debtor's Plan does not seek to resolve any ownership disputes and seeks to fully repay all creditors includes Mr. Goldberg.

3.    Significant Events and Actions:

The following is a list of significant events and actions that occurred in this case from the date of the filing to the present:

- The Debtor filed its Petition, completed its Schedules and the Statement of Financial Affairs by on or about **October 3, 2016**.

- On or about **November 7, 2016**, the Debtor filed a dissolution action entitled Tul investments, Inc. v. ABMS, LLC with Case No. BC636609 with an Involuntary Dissolution and Declaratory Causes of Action to dissolve GW to fund the Debtor's Plan.

- On **November 8, 2016**, the 341 (a) Meeting of Creditors was held and concluded. The Debtor's principal, Yuval Stelmach, appeared on behalf of the Debtor.

- On or about **November 28, 2016**, Goldberg filed Proof of Claim No. 2 demanding $547,022.26 from the Estate as a Judgment Creditor.

- On **December 6, 2016** the Notice of Bar Date for Filing Proofs of Claim was served on all creditors and parties in interest by the Debtor. The Claims Bar

---

DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH

1    Deadline was set for **February 7, 2017** by the Court.

2    •    On or about **December 1, 2016**, the Debtor obtained a Broker's Price Opinion
3         ("BPO") from a licensed commercial broker for the Debtor's real property holdings.

4    •    Finally, as the Court is aware the Debtor has paid Mr. Goldberg $11,400.00 on or
         about **December 8, 2016**.
5

6    •    On or about **January 24, 2017**, Mr. Goldberg file his Motion seeking the Dismissal
         of the Debtor's case.

7    •    On or about **February 24, 2017**, the Debtor served its Disclosure Statement and
8         Plan on all creditors. The Disclosure Statement is set for a hearing Re: Adequacy
          of Debtor's Disclosure Statement Describing Chapter 11 Plan of Reorganization
9         an approval hearing on **April 6, 2017.**

                                                    II.

10
               **THERE IS NO CAUSE FOR DISMISSAL OF THE DEBTOR'S CASE.**

11
          Dismissal or conversion of a Chapter 11 case is a "drastic measure" and the burden is on

12   the Movants to "prove that the relief requested is warranted and not premature." In re Dark Horse

13   Tavern. 189 B.R. 576, 580 (Bankr. N.D.N.Y. 1995); 1n re The Adbrite Corp., 290 B.R. 218

14   (Bankr. S.D.N.Y. 2003) (citing In re Woodbrook Assocs. 19 F.3d 312, 316 (7th Cir. 1994) (the

15   burden is on the movant to prove "cause" by a preponderance of the evidence)). Section 1112(b)

16   of the Bankruptcy Code ("Section 1112(b)"), sets forth the grounds for dismissal or conversion of

17   a Chapter 11 bankruptcy case, permits the Court to dismiss or convert a case under Chapter 11

18   on the request of a party-in-interest after notice and a hearing for "cause" and if dismissal or

19   conversion is in the best interest of creditors and the Estate. Notably, the "harshness of

20   conversion or dismissal mandates that it result only upon a strong evidentiary showing." In re

21   Dark Horse Tavern. 189 B.R. at 580.

22        A motion filed under Section 1112(b) necessarily invokes a three-step analysis. First, a

23   determination must be made as to whether "cause" exists to dismiss or convert the Bankruptcy

24   Case. See 11 U.S.C. § 1112(b). Second, assuming cause exists, a determination must be made

25   as to whether dismissal or conversion is in fact in the best interest of creditors and the Estate.

26   See id.; see also Colliers on Bankruptcy § 1112.04[1] (15th ed.) ("Because relief under section

27   1112(b) is discretionary rather than mandatory, the court may decline to convert or dismiss a

28
─────────────────────────────────────────────────
DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH

1    case under section 1112(b) even in the presence of cause."); In re Western Pacific Airlines, Inc.,

2    218 B.R. 590, 593-594 (Bankr. D. Colo. 1998) ("[T]he existence of one or more grounds for

3    conversion as set forth in 11 U.S.C. § 1112(b) does not compel such action" (citations omitted)).

4    Third, assuming cause exists to dismiss or convert and that the Court determines that

5    conversion or dismissal is warranted, a determination must then be made as to which option is in

6    the best interest of creditors and the Estate. See Rolex Corp. v. Associate Material, Inc. (In re

7    Superior Siding & Window, Inc.), 14 F.3d 240, 242 (4th Cir. 1994); In re Staff Investment Co.,

8    146 B.R. 256, 260 (Bankr. E.D. Cal. 1992) ("A motion made under section 1112(b) give the court

9    the option of dismissing or converting, regardless of whether the motion itself seeks only

10    dismissal or only conversion. Upon the requisite showing of cause under section 1112(b), it is up

11    to the court to choose between dismissal or conversion, 'whichever is in the best interest of

12    creditors and the estate.'") (citing 11 U.S.C. § 1112(b)).

13      In this instance, the Motion seeks the drastic remedy of Dismissal but it has failed to

14    show just "cause." As set forth herein, the Debtor was 30 days delayed in filings its Disclosure

15    Statement and Plan because the Debtor did not have access to the financials for 2016 by

16    **January 20, 2017**. As soon as the Debtor obtained the needed information, the Debtor filed its

17    Disclosure Statement and Plan on **February 24, 2017**. As set forth above, the Debtor has

18    property, income, and a feasible Plan to fully repay all of its creditors, including the Movant.

19    Finally, as the Court is aware the Debtor has paid Mr. Goldberg $11,400.00 on or about

20    **December 8, 2016** and its Plan calls out for additional payments. Therefore, Mr. Goldberg has

21    not been prejudiced by the Debtor's slight delay in the filing of its Disclosure Statement and Plan.

22      Finally, assuming Mr. Goldberg is actually able to show "cause," Mr. Goldberg's Motion

23    still fails because he is unable to establish that dismissal is in the best interests of all of the

24    creditors which is a compulsory factor for consideration of any motion filed pursuant to 11 U.S.C.

25    § 1112(b).

26    //

27    //

28    ///

DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH

III.

## DISMISSAL/CONVERSION MUST BE DENIED BECAUSE IT IS NOT IN THE BEST

## INTERESTS OF CREDITORS AND THE ESTATE

Section 1112(b) and its legislative history clearly provide that dismissal is discretionary, even where there is ""cause" under the statute. Section 1112(b) states: ... on request of a party in interest ... the court *may* convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause. 11 U.S.C. §1112(b). Stated otherwise, where ""cause" is shown, ""the court may convert ... or may dismiss a case under this chapter..." The statute clearly does *not* state that where ""cause" is shown, the court ""shall" or ""must" convert or dismiss. Thus, the statute is discretionary in nature. This conclusion is amply supported. *Collier* expressly concurs in this conclusion.

Because relief under section 1112(b) is discretionary rather than mandatory, the court may decline to convert or dismiss a case under section 1112(b) *even in the presence of cause.* As the House Report explains: " "Subsection (b) gives wide discretion to the court to make an appropriate disposition of the case when a party in interest requests." *Collier on Bankruptcy 15th ed. Revised,* „11 12.04[1] (1999) *citing* H. Rep. 595, 95th Cong., 1st Sess. 405 (1977), reprinted in App. Pt. 4(d)(i). *See also In re Continental Holdings, Inc.,* 170 B.R. 919, 927 (Bankr. N.D. Ohio 1994) (""motion to dismiss should not "reflexively ... be granted whenever cause exists. On the contrary, "Section 1112(b) requires a court to move to a second, analytically separate step and to base its decision whether to dismiss or convert on the "the best interest of creditors and the estate.' "). Thus, even where ""cause" is shown, the court must exercise its discretion by considering whether dismissal/conversion is in the best interests of creditors and the estate. Thus, a court must deny a motion to dismiss or convert where such dismissal or conversion would not be in the best interests of creditors and the estate.

Similarly, in *In re Jartran, Inc.,* 71 B.R. 938, (Bankr.N.D. Ill 1987) *affirmed* 87 B.R. 525 (N.D. Ill. 1988), the district court affirmed the decision of the bankruptcy court denying a motion to dismiss or convert, despite the existence of ""cause," based solely upon the finding that

dismissal or conversion was *not* in the best interests of creditors and the estate. *Id.* at 528 ("'Judge Schwartz correctly noted that <u>section 1112(b)</u> is discretionary in nature. Judge Schwartz found that dismissal of Jartran II and conversion of Jartran I would not be in the best interest of the creditors and the estate.... We affirm Judge Schwartz's decision refusing to dismiss Jartran II and to convert Jartran 1'').

Accordingly, it is clear that the court can only dismiss or convert a case under <u>Section 1112(b)</u> where there is both: (i) "'cause'' enumerated in <u>Section 1112(b), and (ii)</u> it is in the best interests of creditors and the estate. Stated conversely, where it is not in the best interests of the estate, the Court must deny a motion under <u>§1112(b)</u>. Since the moving party bears the burden of proof under <u>Section 1112(b)</u>, the Movant must establish that dismissal and/or conversion is in the best interests of the Estate.

As set forth herein, the Movant have not and cannot meet their burden. If the instant Motion is granted and the case is dismissed, all of Debtor's creditors will have to seek recovery from the Debtor's by engaging in further litigation without any guarantee of recovery. Specifically, there is no easy mechanism for the liquidation of the Debtor assets.  Moreover, a liquidation of the Debtor's assets will require the retention and costs of an attorney to prosecute dissolution actions, a real estate broker to list property for sale, sale & escrow costs, and as noted before the payment of taxes on the gains from each sale which will be in substantial in most instances. Overall, a liquidation of the Debtor's real property holding will take years of litigation with a very significant legal and tax costs. Therefore, under the Debtor's Plan all classes will receive more than they would in the event of a liquidation. As such, the Debtor's Plan is in the best interest of the Creditors and the Movant's Motion to Dismiss must be denied.

The Debtor's case should not be converted to a Chapter 7 case either. As set forth above, the Debtor does not own any property directly and of the Debtor's real property holdings. Further, the entities that own the properties have other members, shareholders and managers whom may not agree to sell the properties and demand involuntary dissolution because of the capital gains each sale will cause the ownerships. As such, if this matter is converted a Chapter 7 trustee would have to hire his or her own professionals to add another layer of administrative

DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH

1  expenses to liquidate any asset. Further, a Chapter 7 trustee would necessarily require a

2  substantial amount of time to become familiar with the Debtor's background as well as with the

3  numerous pending issues in the case. For a Chapter 7 trustee and its professionals to come up

4  to speed on so many issues will take a substantial amount of time and expense for the estate.

5  Therefore, the creditors will likely recover far less than full value if this case is converted to a

6  Chapter 7 case instead of the present Chapter 11 case.

7      In light of the foregoing, it is clear that the dismissal nor a conversion of the case is in the

8  best interests of creditors and the estate. Accordingly, the Motion must be denied, irrespective of

9  whether "cause" is established.

10                                IV.

11                            **CONCLUSION**

12      For the reasons set forth herein, the Court should conclude that dismissal or conversion

13  of this case is not warranted or appropriate. As the Movant has not met its burden of proof, the

14  Motion should be denied.

15  DATED:  March 22, 2017            **ABBASI LAW CORPORATION**

16

17                                   _____

18                                   **MATTHEW ABBASI,**
                                     **ATTORNEYS FOR DEBTOR,**
19                                   **TUL INVESTMENTS, INC.**

20

21

22

23

24

25

26

27

28

DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH

**PROOF OF SERVICE OF DOCUMENT**
**(IN RE: TUL INVESTMENTS, INC.; 1:16-bk-12869-MT)**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 8889 WEST OLYMPIC BLVD, SUITE 240, BEVERLY HILLS, CALIFORNIA 90211. On the date this proof of service is signed, I caused a true and correct copy of the foregoing document described as:

**DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO**
**DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**1.      TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document was served on the foregoing parties by the court via NEF and hyperlink to the document on 2/24/2017:

Katherine Bunker on behalf of U.S. Trustee United States Trustee (SV): kate.bunker@usdoj.gov

David S Hagen on behalf of Creditor Shlomo Goldberg: go4broq@earthlink.net

Ronald N Richards on behalf of Interested Party Courtesy NEF: ron@ronaldrichards.com, nick@ronaldrichards.com

United States Trustee (SV): ustpregion16.wh.ecf@usdoj.gov

Alla Tenina on behalf of Creditor ABMS Limited Liability Company
alla@teninalaw.com, Monique@teninalaw.com

Nathan F Smith on behalf of Creditor East West Bank
nathan@mclaw.org, CACD_ECF@mclaw.org

M Jonathan Hayes on behalf of Creditor Gil and Assaf Naor
jhayes@srhlawfirm.com,
roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;jhayesecf@gmail.com

**2.      SERVED BY UNITED STATES MAIL:** On 3/22/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**BANKRUPTCY COURT**
Hon. Judge Maureen A. Tighe
21041 Burbank Blvd., Crtrm 302
Woodland Hills, CA 91367

**I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.**

3/22/2017
_____                    _____
*Date*                                                                                    *MATTHEW ABBASI, ESQ.*

DEBTOR'S OPPOSITION TO CREDITOR'S MOTION TO DISMISS WITH SUPPORTING DECLARATION YUVAL STELMACH

MATTHEW ABBASI, ESQ.; SBN 215030
**ABBASI LAW CORPORATION**
8889 WEST OLYMPIC BOULEVARD, SUITE 240
BEVERLY HILLS, CALIFORNIA 90211
TELEPHONE: (310) 358-9341
FACSIMILE:    (888) 709-5448

ATTORNEY FOR DEBTOR, AND DEBTOR
-IN-POSSESSION, TUL INVESTMENTS, INC.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO DIVISION

| | |
|---|---|
| In re: | **Case No.: 1:16-bk-12869-MT** |
| | **Chapter 11 Proceedings** |
| TUL INVESTMENTS, INC. | **DECLARATION OF YUVAL STELMACH IN SUPPORT OF THE DEBTOR'S OPPOSITION TO THE MOTION TO DISMISS** |
| Debtor and Debtor in Possession. | |

## DECLARATION OF YUVAL STELMACH

I, **YUVAL STELMACH**, declare:

I am over the age of eighteen (18) years old, and if called upon to testify I could and would do so competently. I have personal knowledge of the facts set forth herein, and based on that personal knowledge, I assert the following facts as true and correct to the best of my knowledge:

1.    I am the President of the Debtor and the Debtor-in-Possession, (the "Debtor"), in the herein Chapter 11 Reorganization case and am fully authorized to submit the herein Declaration. As the Debtor's President, I personally caused the Debtor to file the herein voluntarily Chapter 11 Bankruptcy case on **October 3, 2016**. Since the commencement of the

bankruptcy case, Debtor has continued to manage his own affairs as a Debtor-in-Possession ("DIP") pursuant to §§1107 and 1108 of the Bankruptcy Code.

2.     Since the filing of this case, the Debtor has fully complied with all of the requirements of the United States Trustee's Office and the 341 (a) Meeting of Creditors was held and concluded on **November 8, 2016**. The Debtor has filed all required Monthly Operating Reports and has fully cooperated with the United States Trustee's Office ("UST").

3.     The Debtor has no secured creditors and no creditor has a security claim on its income. Therefore, the Debtor has not filed a Motion seeking authorizing for the use of cash collateral.

4.     The Debtor its Disclosure Statement and Plan with all supporting declarations on **February 24, 2017**. These documents were late because the Debtor did not have all of the needed financials from its various holdings for 2016 to complete the same by January 20, 2017. The Debtor will be filing an amended Disclosure Statement and Plan in the next few days to resolve and respond to all filed Objections.

**<u>DEBTOR'S DISPUTED OWNERSHIP</u>**

5.     As it stands, the Debtor has two (2) unresolved ownership disputes which the Debtor does <u>not</u> seek to resolve via its Plan. Based on the books and records of the Debtor, the following is a listing of the Debtor's disputed ownership at the filing of the Petition:

- Shlomo Goldberg ("Goldberg") owns 7.5% of the Debtor.
- Estate of Lea Goldberg (Shlomo Goldberg's deceased wife) owns 7.5% of the Debtor.
- Yuval and Tally Stelmach ("Stelmach") own the remaining 85% of the Debtor.

6.     As it stands, the ownership stake of Lea Goldberg is in dispute and the subject of a pending contested Will action in the State of Israel. As such, the Debtor does not seek to resolve this dispute via its Plan. I reserve all my rights to take action on this dispute after the proceedings in Israel have been concluded.

7.     As it stands, I contest Mr. Goldberg's ownership in the Debtor because the Judgment he obtained in the State Court Action (POC-2) is in reality an equity claim disguised as a Creditor claim. Specifically, Mr. Goldberg's claim is based on a judgment which relates exclusively to disputed disbursements made to the Debtor from an unrelated interpleader

DECLARATION OF YUVAL STELMACH IN SUPPORT OF THE DEBTOR'S
OPPOSITION TO MOTION TO DISMISS

judgment involving the sale of Non-Estate Property in Glendora, California. This sale was supposed to buy-out Mr. Goldberg's interests but the proceeds were instead used to pay for legal fees and costs incurred in the past 12 years of litigation between Mr. Goldberg and I. Therefore, the State Court Judgment is an equity claim. However, as noted before, the Debtor does not seek to resolve this dispute via its Plan but I reserve all my personal rights.

## DEBTOR'S ESTATE

8.     The Debtor is a real estate investment company that owns and manages its interest in other entities. The Debtor has listed the income generated by all of its holdings in the Petition and in the herein Statement. As set out in the Petition, the Debtor owns 50% of a company called GOLDEN WEST REAL ESTATE, LLC ("GW"); and 50% of a company called TUL ANTHONY, LTD ("Tul Anthony"). In turn, GW and Tul Anthony own the following real properties:

- GW owns 100% of a commercial property located at 1880 S. Western Ave., Los Angeles California ("Western Property").

- Tul Anthony owns 14% of an entity named BALBOA PLAZA, LLC ("BP") which owns a commercial property located at 17050 Chatsworth Street, Grenada Hills, California ("Chatsworth Property").

- Tul Anthony owns 100% of an entity named TUL RESEDA, LP ("Tul Reseda") which owns a commercial property located at 7126 Reseda Blvd., Reseda, California ("Reseda Property").

9.     The Debtor does not directly own any real property but the Debtor is the 100% equitable owner of a commercial property located at 101-107 Barrington Way, Brentwood, California (the "Brentwood Property"). The Brentwood Property is currently legally owned by the Stelmach Family 2002 Living Trust ("SFT") but the true and correct owner of this property has always been the Debtor. Specifically, the Brentwood Property was purchased on or about **October 31, 1995** by the Debtor and was owned free and clear by the Debtor until 2003. Thereafter, on or about **December 16, 2003,** the Debtor conveyed title of this property to the SFT in order to qualify for a loan because the Debtor did not have sufficient credit to obtain the loan on its own. Consequently, this property had to be transferred into our living trust (SFT) and my wife and I had to personally guarantee the loan. This loan has since been paid-off but due to pending

---

3

DECLARATION OF YUVAL STELMACH IN SUPPORT OF THE DEBTOR'S
OPPOSITION TO MOTION TO DISMISS

litigation this property was not re-conveyed to the Debtor before the filing of the Petition. Nonetheless, title to this property can be changed back to the Debtor if needed to fund the Debtor's Plan.

10.    Attached hereto as **Exhibit "A"** is a true and correct copy of the **October 31, 1995** Grant Deed of the Brentwood Property by Northern Trust Bank to the Debtor after the purchase of said property.

11.    Attached hereto as **Exhibit "B"** is a true and correct copy of the **December 16, 2003** Grant Deed of the Brentwood Property by the Debtor to SFT.

## DEBTOR'S CREDITORS

12.    As listed in the Petition, one of the Debtor's biggest Creditor is, EAST WEST BANK ("EWB"). As it stands, the Debtor owes approximately **$1,369,921.38** (unsecured) to EWB under Account Number ending with 00001. This debt was incurred jointly by the Debtor and I but the proceeds were used by the Debtor to buy property and to fund its operations. Specifically, the monies charged on this Credit Line was used to pay to pay-off loans for Estate property (Reseda Property) and used as direct loans to the Debtor to fund its operations.

13.    I mistakenly paid EWB its monthly owed payments from the Debtor's DIP account as the Debtor's plan calls for the Debtor to enter into new loan agreement directly with EWB to become a direct obligor for the line of credit debt owed to EWB. However, the Debtor's DIP account was reimbursed as I have repaid the funds paid from the DIP account to EWB.

14.    On November 28, 2016, Shlomo Goldberg filed Proof of Claim No. 2 ("POC-2") for the alleged sum of $547,022.26. POC-2 is based solely on a June 26, 2013 State Court Judgment from a matter entitled Shlomo Goldberg v. Yuval Stelmach et al. with a Trial Court Case No. of LC075563 (hereinafter the "State Court Judgment").

15.    The Debtor has the ability to fund a Plan at it generates a net income of about $20,000 a month. Further, the Debtor will be able to fund a Plan from the pending dissolution of GW which is the 100% owner of the Western Property. As it stands, the Debtor is involved in a state court action entitled Tul investments, Inc. v. ABMS, LLC with Case No. BC636609 to dissolve GW. Finally, if needed the Debtor has obtained access to a line of credit for at least

$250,000.00 from Rea Stelmach. Finally, the Debtor has currently about $80,000.00 in its DIP account. In sum, the Debtor can pay at least **$330,000.00** to fund its Plan and make monthly payments thereafter to fund a Plan. For these reasons, the Debtor's case should not be dismissed.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct to the best of my knowledge. This Declaration was executed this date, MARCH 22, 2017, in Los Angeles, California.

YUVAL STELMACH, Declarant

DECLARATION OF YUVAL STELMACH IN SUPPORT OF THE DEBTOR'S
OPPOSITION TO MOTION TO DISMISS

EXHIBIT "A"

RECORDING REQUESTED BY
Investors Title Company
AND WHEN RECORDED MAIL TO:
Yuval Stelmach
Taly Stelmach
5114 Encino Avenue
Encino, CA 91316

```
RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

OCT 31 1995    AT 8 A.M.
```

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 4401-006-003    Title Order No.: 798903-9    Escrow: 15030-JM

## GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) DOCUMENTARY TRANSFER TAX $522.50 CITY TAX $2,137.50
[ X ] computed on full value of property conveyed, or
   computed on full value less value of liens or encumbrances remaining at time of sale,
   unincorporated area: [ X ] City of Los Angeles , and

```
FEE
$7
P
```

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
**Northern Trust Bank of California N.A., as Successor in interest to Title Insurance and Trust Co., as Trustee**

hereby GRANT(S) to  Tul Investments, Inc., a California Corporation

the following described property in the City of Los Angles, County of Los Angeles State of California;

The Northeasterly 25 feet, measured at right angles to the Northeasterly line thereof, of Lot 2 Tract 9394, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 144, Pages 64 and 65 of Maps, in the office of the County Recorder of said County.
The Grantors do hereby sell, assign, transfer and set over unto the Grantees all right, title and interest accruing to said Grantors under that certain lease recorded October 11, 1977, as Instrument No. 77-1123358 insofar as the Grantors are entitled to participate in*
Document Dated: June 27, 1995                            *production and other benefits under said lease.

Northern Trust Bank of California N.A.,
as Successor in interest to Title
Insurance and Trust Co., as Trustee

By: _____
   David Young, V.P.

STATE OF CALIFORNIA
COUNTY OF ___ Los Angeles ___ }SS
On __7-3-95__ before me, JACQUE R. MARBURY, NOTARY PUBLIC
personally appeared DAVID YOUNG
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature Jacque R. Marbury

```
JACQUE R. MARBURY
COMM. # 991948
Notary Public — California
LOS ANGELES COUNTY
My Comm. Expires APR 18, 1997
```

This area for official notarial seal.

EXHIBIT "B"

 

This page is part of your document - DO NOT DISCARD

03 3785978

```
RECORDED/FILED IN OFFICIAL RECORDS
          RECORDER'S OFFICE
       LOS ANGELES COUNTY
            CALIFORNIA

       DEC 16 2003
                          AT 8 A.M
```

**TITLE(S) :**  

 



L E A D   S H E E T

FEE

FEE
$7
O

D.T.T

NOTIFICATION SENT $4

CODE
20

CODE
19

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.     Number of AIN's Shown

4001 - 006 - 003

    THIS FORM NOT TO BE DUPLICATED    

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
The Stelmack Family 2002 Living Trust
17340 Magnolia Blvd.
Encino, CA   91316

03  3785978

Space Above This Line for Recorder's Use Only

A.P.N.: 24001-006-003          Order No.:          Escrow No.:

## GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $ & CITY $
[  ]   computed on full value of property conveyed, or
[  ]   computed on full value less value of liens or encumbrances remaining at time of sale.
[  ]   unincorporated area: [  ] City of Los Angeles, and

FOR A VALUABLE CONSIDERATION, Receipt of which is hereby acknowledged,
Tul Investments, Inc., A California Corporation
hereby GRANT(S) to  The Stelmack Family 2002 Living Trust
the following described property in the City of Los Angeles, County of Los Angeles State of California:

The Northeasterly 25 feet, measured at right angles to the Northeasterly line therof, of Lot 2 Tract 9394, in the City
of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 144, pages 64 and 65 of
Mapsk, in the office of the County Recorder of Said County.

"This is a bonafide gift and the grantor received nothing in return, R & T 11911."

_YUVAL STELMACH_

Tul Investments, Inc., A California Corporation
_YUVAL STELMACH_
Document Date:  October 23, 2003

STATE OF CALIFORNIA                      )SS
COUNTY OF _LOS ANGELES_                  )
On _12-03-2003_              before me, _NADER AFRAM (NOTARY PUBLIC)_
personally appeared _YUVAL STELMACH ONLY_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Nader A_          12/03/03

_NADER AFRAM_                          This area for official notarial seal.

NADER AFRAM
COMM. # 1281605
NOTARY PUBLIC, CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Nov. 6, 2004

THIS INSTRUMENT IS RECORDED AT
THE REQUEST OF CALIFORNIA TITLE
COMPANY AS AN ACCOMMODATION
ONLY IT HAS NOT BEEN EXAMINED AS
TO ITS EXECUTION OR AS TO ITS
EFFECTS UPON TITLE.

Mail Tax Statements to:   SAME AS ABOVE  or  Address Noted Below