1  MATTHEW ABBASI, ESQ., SBN 215030
   **ABBASI LAW CORPORATION**
2  8889 WEST OLYMPIC BLVD, SUITE 240
   BEVERLY HILLS, CALIFORNIA 90211
3  TEL:(310) 358-9341
   FAX: (888) 709-5448
4  EMAIL: MATTHEW@MALAWGROUP.COM

5  ATTORNEYS FOR, DEBTOR-IN-POSSESSION,
   TUL INVESTMENTS, INC.

6

7              **UNITED STATES BANKRUPTCY COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9              **SAN FERNANDO VALLEY DIVISION**

10

11 |                                    | **CASE NO.: 1:16-bk-12869-MT**

12 | In re:                             | **CHAPTER 11 PROCEEDING**

13 |                                    | **FINAL APPLICATION OF ABBASI LAW**
14 |                                    | **CORPORATION FOR APPROVAL OF**
   |                                    | **FEES AND REIMBURSEMENT OF**
   | TUL INVESTMENTS, INC.              | **EXPENSES; DECLARATIONS OF**
15 |                                    | **MATTHEW ABBASI AND YUVAL**
   |                                    | **STELMACH IN SUPPORT THEREOF**
16 |
17 |            Debtor.                 | **HEARING:**

18 |                                    | **DATE:    May 3, 2017**
   |                                    | **TIME:      9:30 a.m.**
19 |                                    | **COURTROOM: 302**
   |                                    | **JUDGE MAUREEN A. TIGHE**
20

21         **TO THE BANKRUPTCY COURT, THE HONORABLE JUDGE MAUREEN A. TIGHE,**

22 **THE UNITED STATES TRUSTEE'S OFFICE, AND ALL INTERESTED PARTIES:**

23         **PLEASE TAKE NOTICE** that, Abbasi Law Corporation ("ALC"), bankruptcy counsel to

24 the Debtor, TUL INVESTMENTS, INC., the Debtor and Debtor in Possession in the above

25 referenced case (the "Debtor"), hereby submits the herein Application for the Approval of ALC's

26 Fees and Reimbursement of Expenses (the "Application") for services rendered and expenses

27 incurred for the period of **October 3, 2016** to **April 10, 2017** (the "Covered Period") pursuant to

28 11 U.S.C. §327, §330, and §331.

# I.

## *INTRODUCTORY STATEMENT*

Tul Investments, Inc., a California Corporation (the "Debtor"), is the Debtor and the Debtor-In-Possession ("DIP") in this Chapter 11 case. The Debtor began its Bankruptcy case by filing a petition under Chapter 11 of the U.S. Bankruptcy Code (the "Code") on **October 3, 2016** (the "Petition Date"). This case was dismissed with a one (1) year bar to refiling on **April 5, 2017.** As of this filing, the Court has not issued the Dismissal Order.

The Debtor is a real estate investment company that owns and manages its interest in other entities. As set forth in the Debtor's Petition, the Debtor has no secured creditors and no creditor has a security claim on any of the Debtor's income. However, there are pending disputes between two the owners of the Debtor which have caused over a decade of litigation in the United States and Israel. As listed in the Petition, the Debtor's unsecured creditors and debts are as follows: a judgment obtained by Creditor/Owner, Shlomo Goldberg ("Goldberg"); a line of credit owed to Creditor, East West Bank ("EWB"); two (2) claims for money from Creditors Gil Naor ("GN") and Assaf Naor ("AN"); and two (2) claims for money from Creditors, Gil's Electrical, Service AZ Air-conditioning & Heating, and Pacific Builders.

As more fully stated in the Debtor's First Amended Disclosure Statement, the Debtor's Reorganization Plan called for an orderly full repayment of all claims over several years with interest. Under the proposed amended Plan, the Debtor was going to leave a down-payment to each creditor and make monthly payments thereafter until the Debtor sold an asset or resolved the pending dissolution action. Overall, the Debtor's Plan could have taken up to fifteen (15) years to administer but it could also have been administered much shorter because the proceeds from any sale or dissolution would have been used to make further payments to all creditors, pro-rata. In the end, on **April 5, 2017** the Court did not approve the Debtor's Disclosure Statement and dismissed the case. Moreover, the Court felt that the history of the litigation in this case warranted the imposition of a Bar to Refiling.

In the herein Application, ALC seeks the Court's Approval for ALC's Application for all incurred Fees and Expenses during the period of **October 3, 2016 to April 10, 2017** (the

"Covered Period"). This Application is for ALC's First and Final Application for Fees and Costs in this case.

Overall, as explained herein, through ALC's efforts the Debtor was able to recover **$50,000.00** of its income which was being wrongfully withheld by GW (see discussions below). Furthermore, the timely filing of this case prevented the filing of lawsuits for damages by all or some of the Third-Party Tenants of the Brentwood Property (see discussions below) whom were almost held in contempt for failing to turn over Debtor's rental income to Mr. Goldberg. In short, through the actions of ALC, the Debtor was able to recover funds wrongly withheld by a creditor and prevented damages/liability from Third-Party Tenants.

(1)    Summary of Estate:

As explained in the Debtor petition, the Debtor has the following corporate ownerships and assets:

- 50% of a company called GOLDEN WEST REAL ESTATE, LLC ("GW"); and
- 50% of a company called TUL ANTHONY, LTD ("Tul Anthony").

The above-cited companies own the following real properties:

- GW owns 100% of a commercial property located at 1880 S. Western Ave., Los Angeles California ("Western Property").

- Tul Anthony owns 14% of an entity named BALBOA PLAZA, LLC ("BP") which owns a commercial property located at 17050 Chatsworth Street, Grenada Hills, California ("Chatsworth Property").

- Tul Anthony owns 100% of an entity named TUL RESEDA, LP ("Tul Reseda") which owns a commercial property located at 7126 Reseda Blvd., Reseda, California ("Reseda Property").

The Debtor does not directly own any real property but the Debtor is the 100% equitable owner of a commercial property located at 101-107 Barrington Way, Brentwood, California (the "Brentwood Property"). The Brentwood Property is currently legally owned by the <u>Stelmach Family 2002 Living Trust</u> ("SFT") but the true and correct owner of this property is the Debtor.

As of the Petition Date, the Debtor has two (2) unresolved ownership disputes which the Debtor did not seek to resolve via its proposed Plan in this matter. As listed in the Debtor's Petition, the following is a listing of the Debtor's disputed ownership:

- Shlomo Goldberg owns 7.5% of the Debtor.
- Estate of Lea Goldberg (Shlomo Goldberg's deceased wife) owns 7.5% of the Debtor.
- Yuval and Tally Stelmach own the remaining 85% of the Debtor.

## II.

### *FEES AND EXPENSES INCURRED AND NOTICE*

**A.    Summary of ALC's Application for Payment of Fees & Expenses.**

(1)    Retainer Deposit:

ALC was provided a retainer payment in the sum of **$4,448.00** (the "Retainer Deposit") from Yuval Stelmach.  No other payments have been made to ALC.

(2)    Fees and Costs Incurred:

ALC paid the Debtor's initial filing fee totaling **$1,717.00** from the Retainer Deposit which left a total of **$2,731.00** for the payment of all Fees and Costs.

As detailed in **Exhibit "A"** to the Declaration of Matthew Abbasi, ALC incurred **$2,733.00** for filing fees/costs.

As detailed in **Exhibit "A"** to the Declaration of Matthew Abbasi, ALC incurred **$24,464.50** for professional fees.

In sum, ALC is owed **$27,197.50** (the "Outstanding Sum") for professionals fees and costs after the application of the entire Retainer Deposit.

**B.    Proper Notice.**

Pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(7), ALC has provided full Notice of this Application and the amount of fees and expenses sought herein upon the OUST, the Debtor, all known Creditors of the Estate, and all parties who have requested special notice. Therefore, the herein Application has been properly served in compliance with the Code. See Proof of Service.

## III.

### *BRIEF NARRATIVE HISTORY OF THE PRESENT POSTURE OF THIS CASE,*

### *CIRCUMSTANCES THAT LED TO THE FILING OF THE DEBTOR'S CHAPTER 11 CASE,*

### *AND SIGNIFICANT EVENTS WHICH OCCURRED DURING THE COVERED PERIOD*

**A.    Description and History of the Debtor's Business, Case Background,**

4

**Reorganization Plan, and Necessity for Filing of Chapter 11.**

As explained before, the Debtor filed its Voluntary Petition for Reorganization under Chapter 11 of the Title 11 of the United States Code in order to preserve its assets, recover funds held by others, and to prevent lawsuit against the Debtor.

In this instance, the main factor leading up to the herein filing was the pending execution of a levy by equity owner and judgment-creditor Mr. Goldberg. This levy relates to a June 26, 2013 State Court Judgment ("State Court Judgment") which arises out of a lawsuit entitled Shlomo Goldberg v. Yuval Stelmach et al. with a Trial Court Case No. of LC075563 ("State Court Action"). The State Court Judgment is against the Debtor, REM, LLC, and Yuval Stelmach, joint and severable. As it stands, the State Court Judgment has been entered "jointly and severally" against the Debtor, Yuval Stelmach, and REM LLC.

**B.      Compliance with Bankruptcy Requirements and Court Orders.**

During the Covered Period, the Debtor has fully complied with all Court orders, filed all required Monthly Operating Reports, attended all required hearings/meetings, complied with all mandates of the United States Trustee's Office ("OUST"), paid all OUST Quarterly Fees, and complied with all of the relevant bankruptcy laws. Moreover, the Debtor attended its 341 (a) Meeting which was held and concluded on **November 8, 2016** and attended the Initial Status Conference in this matter which was held on **December 1 , 2016.**

As the Court's records will reflect, the Debtor has also filed timely and current reports pursuant to 11 U.S.C. §1116 (Financial Statements Declaration), F.R.B.P. §1007 (Equity Securities Holders), F.R.B.P. §1007 (Corporate Ownership Statement) and filed timely Monthly Operating Reports for each month since this case was filed. Finally, as per the mandates of OUST, the Debtor opened one (1) Debtor-In-Possession (DIP) Account.

**C.      Significant Events Which Occurred During the Debtor's Bankruptcy Case**

The following is a list of significant events which have occurred during the Covered Period:

a)  The Debtor filed its Petition, completed its Schedules and the Statement of Financial Affairs by on or about **October 3, 2016.**

5

b) The Debtor complied with the documentary requests of the OUST after the filing and finalized of the Petition. The Debtor has filed all required Monthly Operating Reports.

c) On or about **November 7, 2016**, the Debtor filed a dissolution action entitled Tul investments, Inc. v. ABMS, LLC with Case No. BC636609 with an Involuntary Dissolution and Declaratory Causes of Action to dissolve GW to fund the Debtor's Plan. The Debtor agreed to the lifting of the Automatic Stay to allow GW to file a Cross-complaint for Dissolution. This lawsuit is set for a decisive mediation on **April 13 2017**.

d) The 341 (a) Meeting of Creditors was held and concluded on **November 8, 2016**. The Debtor's principal, Yuval Stelmach, appeared on behalf of the Debtor.

e) On or about **November 28, 2016**, Goldberg filed Proof of Claim No. 2 demanding $547,022.26 from the Estate as a Judgment Creditor.

a) On or about **November 30, 2016**, the Debtor and Mr. Goldberg agreed to a written stipulation whereby the Debtor paid Mr. Goldberg $11,400.00 in interim claim payment. In turn, Mr. Goldberg agreed to stay all legal action to enforce the Judgment against the Debtor by proceeding against the 3rd Party Tenants of the Brentwood Property or seeking to levy any rents from any 3rd Party Tenants of the Brentwood Property.

b) On **December 6, 2016** the Notice of Bar Date for Filing Proofs of Claim was served on all creditors and parties in interest by the Debtor. The Claims Bar Deadline was set for **February 7, 2017** by the Court.

c) ALC's application for employment was approved by the Court on **December 7, 2016**.

d) On or about **December 1, 2016**, the Debtor obtained a Broker's Price Opinion ("BPO") from a licensed commercial broker for the Debtor's real property holdings.

e) On **February 14, 2017**, ALC applied via Ex-Parte in the State Court Action and obtained an Order Quashing the Order Implementing Findings of Contempt Entered on **September 29, 2016** against the 3rd Party Tenants of the Brentwood Property.

f) The Debtor filed its initial Disclosure Statement and Plan for Reorganization on **February 24, 2017**. OUST, Goldberg, and EWB filed Objections to the Debtor's initial Disclosure Statement and Plan for Reorganization.

6

g) The Debtor filed its First Amended Disclosure Statement and First Amended Plan for Reorganization on **March 31, 2017** to resolve the OUST and the Creditors' objections.

h) On **April 5, 2017**, the Court held a hearing on Mr. Goldberg's Motion to Dismiss and granted the Motion with a one (1) year bar to refiling and denied approval of the Debtor's Disclosure Statement and Plan. The Order for the Dismissal has yet to be entered.

1.    <u>Operational Issues</u>

None. The Debtor is an individual.

2.    <u>Administrative Matters</u>

In this instance, in the Covered Period, ALC has addressed all of the Debtor's legal needs in Bankruptcy Court and State Court and kept the Debtor's Estate whole. Further, by filing this case the Debtor was able to greatly limit potential litigation from the 3rd Party Tenants of the Brentwood Property whom were nearly held in Contempt for failing to turn over rents to Mr. Goldberg.

In the initial stages of this case, ALC prepared all of the Debtor's required petition documents and the extensive 7-Day Package disclosures to the OUST. Further, ALC prepared the Debtor's request for Court approval its general counsel (ALC); and the Debtor's request for Court approval of its broker, Chris Comfort.  Furthermore, during the initial part of the case, the Debtor attended the Initial Case Conference on **December 1, 2016** and attended and completed the 341 (a) Meeting of creditors on **November 8, 2016**.

In the second stage of this case, the Debtor recovered Estate property from a Creditor and sought to pool the Debtor's income in the DIP account. Specifically, through the efforts of ALC, the Debtor was able to recover **$50,000.00** in contractual income wrongfully withheld by GW. The recovered funds were deposited in the Debtor's DIP account. These funds along with all income paid by the Debtor's other holdings were deposited in the Debtor's DIP account. Overall, all income paid during the Covered Period were deposited in the DIP account which can be confirmed via the Debtor's Monthly Operating Reports.  During this stage of the case, ALC tried to engage the Debtor's Creditors and had some initial success with Mr. Goldberg as evidenced by the **November 30, 2016** Stipulation Re: Interim Payment of Claim between the

7

Debtor and Mr. Goldberg.  During this stage of the case, ALC also sought to obtain valuation for the Debtor's assets to assist the Debtor with the formulation of a Disclosure Statement and Plan.

In the final stage of this case, ALC unsuccessfully sought approval of a First Amended Disclosure Statement and First Amended Plan for Reorganization which would have paid all claims over fifteen (15) years unless the Estate was able to liquidate or sell assets earlier. However, despite the formulation and submission of two (2) Disclosure Statements and Plans for Reorganization, the Court dismissed the case on **April 5, 2017**.

3.    Employment of Professionals

The Debtor has obtained the Court's approval for all professionals that provided the Estate with any services. In this instance, the following professionals were approved by the Court: a) ALC's application for employment was approved on **December 7, 2016**; and b) the application for employment of Chris Comfort was entered on **April 10, 2017**.

4.    Pending Motions/Matters.

None. This case was tentatively dismissed with a one (1) year bar to refiling on **April 5, 2017**. As of this filing, the Court has not issued the Dismissal Order.

**D.    Fees and Expenses Previously Requested**

ALC has not previously requested Court approval of any fees or expenses.

**E.    Brief Narrative Statement of Services Rendered, Time Expended, and Fees charged for Each Billing Category**

When recording its time, ALC places all time entries for fees into specific categories. These categories consists mainly consist of: a) Preparation; b) Attendance; c) Review; d) Analysis. However, ALC <u>does not charge</u> for travel time at all, <u>does not charge</u> for telephone calls with the Debtor's principal & other retainer professionals under 30-minutes, and <u>does not charge</u> for most email communications. The above omissions represent a great savings to the Estate because the handling of this case involved a great many emails, calls, and travel time to hearings for ALC's personnel.

Inevitably certain time entries do not fit neatly into the above categories while other time entries cross over into more than one category. ALC does its best to place time entries into

8

categories which accurately reflect the work performed. However, it is inevitable that there will be some time entries that have been placed into the incorrect category or where various time entries dealing with the same subject matter have been placed into multiple categories.

**F.    Detailed Listing of All Time Spent by the Professional on the Matter for Which Compensation is Sought**

Attached as **Exhibit "A"** to the Declaration of Matthew Abbasi**,** is a true and correct copy of this cases' accounting with a detailed listing of all the time that ALC's professionals have spent on this case during the Covered Period for which ALC now seeks compensation.

As listed in the ALC's application for Employment, Matthew Abbasi's hourly rate is **$350** while the paralegals at ALC charge **$50** per hour which are at or below the fair market rate for such services. Overall, ALC's professionals spent a total of **87.75** hours on the Debtor's case during the Covered Period.

**G.    Detailed Listing of Expenses by Category**

Attached as **Exhibit "A"** to the Declaration of Matthew Abbasi, is a true and correct copy of a summary listing by category and an itemization of all expenses that ALC advanced on behalf of the Debtor during this case. These expenses were incurred for photocopying, binders, parking, CourtCall, recordation, messenger fees, Federal Express, and mailing costs only as ALC <u>does not charge</u> for faxes, telephone calls less than 30 minutes, and travel expenses amongst other things.

ALC generally handles regular and routine photocopying in-house for which ALC charges its clients 10 cent per page as declared in ALC's Application for Employment and Declaration of Matthew Abbasi. Overall, ALC believes that the fees charged for photocopying and mailing is less than ALC's actual expenses incurred because ALC <u>does not charge</u> for supplies and labor associated with providing photocopying services.

In sum, all expenses that ALC advanced on behalf of the Debtor were necessarily incurred and are properly charged as administrative expenses of the Debtor's Chapter 11 Estate.

///

////

**H.      Source and Amount of Cash Available to Pay ALC's Allowed Fees and Expenses**

As of the date of this Motion, the Debtor currently owes ALC the Outstanding Sum for the Covered Period which it can pay from the funds in Debtor's DIP Account. As of this filing, the DIP Account has an available balance of **$80,000.00.**

**IV.**

### *THE FEES AND EXPENSES REQUESTED SHOULD BE AWARDED*

### *BASED UPON APPLICABLE LAW*

The fees and expenses requested by this Application are an appropriate award for ALC's services in acting as general bankruptcy counsel to the Debtor. §327, §330, and §331 of the Bankruptcy Code, Bankruptcy Rule 2016, Local Bankruptcy Rule 2016-2 and the OUST Fee Guidelines set forth certain requirements that a professional must satisfy in order to obtain allowance for professional fees and reimbursement of costs. Overall, time and labor devoted is only one of many pertinent factors in determining an award of fees and costs.

In this instance, as set forth more fully herein, ALC believes this Application complies with all statutory guidelines and court-imposed requirements. Furthermore, the fees and costs are reasonable.

**A.      Factors In Evaluating Requests for Compensation.**

As a result, 11 U.S.C. § 331 provides for the payment of interim compensation for professionals retained by debtors in possession and creditors' committees:

> "A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement." *11 U.S.C. § 331.* Section 102(1) of the Bankruptcy Code provides that the phrase "after notice and a hearing":
> "(A) means after such notice as appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
> "(B) authorizes an act without an actual hearing if such notice is given properly and if-
> (i) such a hearing is not requested timely by a party in interest...." *11 U.S.C. § 102(1)*

1    Therefore, the request payments are permitted only after notice of the intended payment

2    amounts is given with sufficient time to all parties in interested to object. Further, any party in

3    interest may object to ALC's fees or expenses at the hearing on interim applications, the final fee

4    hearings, or both. The legislative history of the Bankruptcy Code illustrates the intent of

5    Congress that interim compensation be provided on a sufficiently regular basis to ensure the

6    adequacy of interim compensation:

7        "The court may permit more frequent applications if the circumstances warrant, such as
8        in very large cases where the legal work is extensive and merits more frequent
         payments. The court is authorized to allow and order disbursement to the applicant of
9        compensation and reimbursement that is otherwise allowable under section 330." *H.R.
         Rep. No. 595, 95th Cong., 1st Sess. 330 (1977)*

10    As set forth herein, the fees for which the ALC requests compensation and the costs

11    incurred for which the ALC requests reimbursement are for actual and necessary services

12    rendered and costs incurred. The professional services rendered by the ALC have required an

13    expenditure of substantial time and effort. During the Covered Period of this Application, **87.75** in

14    professional hours have been recorded by members of the ALC and more time was actually

15    expended but either was not recorded or was written off.

16    As set forth in ALC's application for employment, ALC's hourly rate in this case for the

17    Covered Period was **$350.00** for Partners, and **$50.00** for Paralegals. Both of these hourly rates

18    are below the fair market value for such services. Further, as noted before, ALC does not charge

19    for travel time, for faxes, telephone calls under 30 min and most emails. Finally, the Debtor has

20    yet to pay the Outstanding Sum owed to ALC but has agreed to a pay the same via a payment

21    plan.

22    In sum, based on the skills brought to bear in this case by the ALC and the results

23    obtained and in light of the accepted Lodestar approach (discussed below), ALC submits that the

24    compensation requested herein is reasonable and appropriate. ALC also submits that all parties

25    in interest were properly served with this Application.

26    **B. The Lodestar Award Should be Calculated by Multiplying a Reasonable Hourly**

27    **Rate by the Hours Expended.**

28    In determining the amount of allowable fees under 11 U.S.C. §330(a), courts are to be

11

guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *In re Manoa Finance Co., Inc.,* 853 F.2d 687, 691 (9th Cir. 1988); *see also Matter of Schaeffer,* 71 B.R. 559, 563 (Bankr. S.D. Ohio 1987). Twelve factors relevant to determining such fees were identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), a Title VII class action case under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and *Kerr v. Screen Extras Guild, Inc.,* 526 F. 2d 67, 70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951 (1976): (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir. 1977) (*Johnson* criteria applicable in bankruptcy cases).

While the *Johnson* and *Kerr* courts only offered guidelines as to relevant factors, in 1984, the Supreme Court, in enunciating guidelines to determine reasonable fees under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, held:

> The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate .... Adjustments to that fee then may be made as necessary in the particular case. *Blum vs. Stenson,* 465 U.S. 886 (1984).

This above is the so-called "Lodestar" calculation. In 1986, the Supreme Court more explicitly indicated that the factors relevant to determining fees should be applied using the Lodestar approach, rather than an ad hoc approach. While holding that the attorney's fee provision of the *Clean Air Act, 42 U.S.C. § 7401 et seq.,* should be interpreted like that of the Civil Rights Act, the Court expressly rejected the ad hoc application of the factors set forth in the *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 and thus *Kerr,* stating that, "the Lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable'

attorney's fee ...." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563-66 (1986). While the Lodestar approach is the primary basis for determining fee awards under the federal fee-shifting statutes and under the Bankruptcy Code, the other factors, previously applied in an ad hoc fashion, still apply in calculating the appropriate hourly rate to use under the Lodestar approach.

In this case, **Exhibit "A"** to the Declaration of Matthew Abbasi lists and ALC's fees and the costs incurred which lists ALC's billing records which are kept in the regular course of business reflecting the services rendered during the Covered Period; and a summary of ALC's expenses incurred by the ALC during the Covered Period. The ALC's time reports are initially handwritten or recorded via computer by the attorney or paralegal performing the described services. The time reports are organized on a daily basis. The ALC is sensitive to issues of "lumping," and unless time was spent in one time frame on a variety of different matters for a particular client, separate time entries are set forth in the time reports. The ALC's charges for its professional services are based upon the time, nature, extent and value of such services and the cost of comparable services in the Southern California region, other than in a case under the Bankruptcy Code.

Overall, as detailed in **Exhibit "A"** to the Declaration of Matthew Abbasi, ALC incurred **$2,733.00** for filing fees/costs; incurred **$24,464.50** for professional fees; and is owed a combined sum of **$27,197.50** (the "Outstanding Sum") for all professionals fees and costs after the application of the entire Retainer Deposit.

In sum, it is clear that ALC has achieved positive results for the Estate and helped safeguard Estate property for the benefit of the Debtor and all Creditors. As noted before, through ALC's actions, the Debtor was able to recover $50,000.00 in wrongly withheld income funds and avoided expensive litigation with Third-Party Tenants of the Brentwood Property amongst other claims.

**V.**

**CONCLUSION**

This is ALC's first and final request for compensation and reimbursement of costs.

13

Neither ALC, nor any partners or associates of the ALC, has any agreement or any understanding of any kind or nature to divide, pay over, or share any portion of the fees to be awarded the ALC with any other person or attorney, except among partners and employees of the ALC.

For the reasons sated herein, ALC maintains that the services rendered by ALC for which compensation is sought in this Application have been beneficial to the Debtor's Estate. Further, ALC maintains that the costs incurred have been necessary and proper. Finally, ALC believes that the sums requested for the costs and services rendered are fair and reasonable.

## VI.

## *PRAYER*

**WHEREFORE,** Abbasi Law Corporation respectfully requests that this Court to authorize and approve the payment of ALC's fees and costs totaling **$27,197.50** for the Covered Period. Abbas Law Corporate also requests for this Court to authorize the Debtor to pay the Outstanding Sum from the Debtor's DIP Account and to provide any other relief the court deems just and appropriate.

DATED:  April 10, 2017                    **ABBASI LAW CORPORATION**

MATTHEW ABBASI, ESQ.
ATTORNEY FOR DEBTOR,
TUL INVESTMENTS, INC.

14

### DECLARATION OF MATTHEW ABBASI

I, **MATTHEW ABBASI**, Declare that:

I am over the age of eighteen (18) years old, and if called upon to testify I could and would do so competently. I am an Attorney admitted to practice law in the State of California and admitted to practice law in the Central, Eastern, Southern and Northern Districts of the United States District Court of California. I have personal knowledge of the following, and based on that personal knowledge, I assert that all such facts are true and correct to the best of my knowledge:

1.    I am the Managing Partner of the Abbasi Law Corporation ("ALC"). ALC maintains its main offices for the practice of law at 8889 West Olympic Blvd, Suite 240, Beverly Hills, California 90211.

2.    ALC is the general bankruptcy counsel for TUL INVESTMENTS, INC., the Debtor and Debtor in Possession (the "Debtor") in the above-referenced Chapter 11 bankruptcy case. This Declaration is being submitted in support of ALC's "Final Application of Abbasi Law Corporation For Approval of Fees and Reimbursement of Expenses" (the "Application").

3.    The Debtor is a real estate investment company that owns and manages its interest in other entities. As set forth in the Debtor's Petition, the Debtor has no secured creditors and no creditor has a security claim on any of the Debtor's income.

4.    In the herein Application, ALC seeks the Court's Approval for all incurred Fees and Expenses during the period of **October 3, 2016 to April 10, 2017** (the "Covered Period"). This Application is for ALC's First and Final Application for Fees and Costs in this case.

5.    ALC filed the Debtor's Petition, completed its Schedules and the Statement of Financial Affairs by on or about October 3, 2016.

6.    The Debtor has  complied with the documentary requests of the OUST after the filing and finalized of the Petition. The Debtor has filed all required Monthly Operating Reports.

7.    On or about November 7, 2016, the Debtor filed a dissolution action entitled Tul Investments, Inc. v. ABMS, LLC with Case No. BC636609 with an Involuntary Dissolution and Declaratory Causes of Action to dissolve GW to fund the Debtor's Plan. The Debtor agreed to the lifting of the Automatic Stay to allow GW to file a Cross-complaint for Dissolution. This lawsuit

is set for a decisive mediation on April 13 2017.

8.    The 341 (a) Meeting of Creditors was held and concluded on November 8, 2016. The Debtor's principal, Yuval Stelmach, appeared on behalf of the Debtor.

9.    On or about November 28, 2016, Goldberg filed Proof of Claim No. 2 demanding $547,022.26 from the Estate as a Judgment Creditor.

10.    On or about November 30, 2016, the Debtor and Mr. Goldberg agreed to a written Stipulation whereby the Debtor paid Mr. Goldberg $11,400.00 in interim claim payment. In turn, Mr. Goldberg agreed to stay all legal action to enforce the Judgment against the Debtor by proceeding against the 3rd Party Tenants of the Brentwood Property or seeking to levy any rents from any 3rd Party Tenants of the Brentwood Property.

11.    On December 6, 2016 the Notice of Bar Date for Filing Proofs of Claim was served on all creditors and parties in interest by the Debtor. The Claims Bar Deadline was set for February 7, 2017 by the Court.

12.    ALC's application for employment was approved by the Court on December 7, 2016.

13.    On or about December 1, 2016, the Debtor obtained a Broker's Price Opinion ("BPO") from a licensed commercial broker for the Debtor's real property holdings.

14.    On February 14, 2017, ALC applied via Ex-Parte in the State Court Action and obtained an Order Quashing the Order Implementing Findings of Contempt Entered on September 29, 2016 against the 3rd Party Tenants of the Brentwood Property.

15.    The Debtor filed its initial Disclosure Statement and Plan for Reorganization on February 24, 2017. OUST, Goldberg, and EWB filed Objections to the Debtor's initial Disclosure Statement and Plan for Reorganization.

16.    The Debtor filed its First Amended Disclosure Statement and First Amended Plan for Reorganization on March 31, 2017 to resolve the OUST and the Creditors' objections.

17.    On April 5, 2017, the Court held a hearing on Mr. Goldberg's Motion to Dismiss and granted the Motion with a one (1) year bar to refiling and denied approval of the Debtor's Disclosure Statement and Plan. The Order for the Dismissal has yet to be entered.

1    I am submitting this Declaration in support of the Debtor's First Amended Application.

2        18.    I am the attorney at ALC responsible for handling the Debtor's Chapter 11 case. I

3    have drafted the herein "Final Application of Abbasi Law Corporation For Approval of Fees and

4    Reimbursement of Expenses" (the "Application") to which this Declaration is attached for the

5    Covered Period.

6        19.    The Amounts requested in the Application for compensation of fees and

7    reimbursements of expenses incurred are based on ALC's business records kept in the ordinary

8    course of ALC's business. Overall, ALC's professionals spent a total of **87.75** hourly on the

9    Debtor's case during the Covered Period. As listed in ALC's Application for Employment, my

10   hourly rate is $350.00 and ALC's paralegal hourly charge is $50.00. I believe that these hourly

11   rates are below or equal to the market-rate for such services. Therefore, I firmly believe that

12   ALC's fees are fair and reasonable.

13       20.    Attached hereto as **Exhibit "A"** is a listing and summary of ALC's fees with a

14   copy of the ALC's time reports and records kept in the regular course of business reflecting the

15   services rendered during the Covered Period. This Exhibit also provides a summary of ALC's

16   expenses incurred by the ALC during the Covered Period.

17       21.    ALC was provided a retainer payment in the sum of **$4,448.00** (the "Retainer

18   Deposit") out of which the Debtor's initial filing fee **$1,717.00** and the other expenses of this case

19   were paid. ALC did <u>not</u> receive any other payments during the Covered Period.

20       22.    As detailed in **Exhibit "A"**, ALC incurred **$2,733.00** for filing fees/costs and

21   incurred **$24,464.50** for professional fees. In sum, ALC is owed **$27,197.50** (the "Outstanding

22   Sum") for professionals fees and costs <u>after</u> the application of the entire Retainer Deposit.

23       23.    In conclusion, this is ALC's first and final request for compensation. Neither ALC,

24   nor any partners or associates of the ALC, has any agreement or any understanding of any kind

25   or nature to divide, pay over, or share any portion of the fees to be awarded the ALC with any

26   other person or attorney, except among partners and employees of the ALC. ALC believes that

27   the services rendered for which compensation is sought in this Application have been beneficial

28   to the Estate, that the costs incurred have been necessary and proper, and that the sums

1   requested for the services rendered and the costs incurred are fair and reasonable.

2       I declare under penalty of perjury under the laws of the United States of America and the

3   State of California that the foregoing is true and correct. Executed on the **April 10, 2017** at

4   Beverly Hills, California.

5       Matthew Abbasi, Esq.:

**PROOF OF SERVICE OF DOCUMENT**
**(IN RE: TUL INVESTMENTS, INC.; 1:16-bk-12869-MT)**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 8889 WEST OLYMPIC BLVD, SUITE 240, BEVERLY HILLS, CALIFORNIA 90211. On the date this proof of service is signed, I caused a true and correct copy of the foregoing document described as:

<u>NOTICE OF APPLICATION AND HEARING; FINAL APPLICATION OF ABBASI LAW CORPORATION FOR APPROVAL OF FEES AND REIMBURSEMENT OF EXPENSES; DECLARATION OF MATTHEW ABBASI; DECLARATION OF YUVAL STELMACH</u>

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document was served on the foregoing parties by the court via NEF and hyperlink to the document on 4/11/2017:

Katherine Bunker on behalf of U.S. Trustee United States Trustee (SV): kate.bunker@usdoj.gov

David S Hagen on behalf of Creditor Shlomo Goldberg: go4broq@earthlink.net

Ronald N Richards on behalf of Interested Party Courtesy NEF: ron@ronaldrichards.com, nick@ronaldrichards.com

United States Trustee (SV) : ustpregion16.wh.ecf@usdoj.gov

Alla Tenina on behalf of Creditor ABMS Limited Liability Company alla@teninalaw.com, Monique@teninalaw.com

M Jonathan Hayes on behalf of Creditor Gil and Assaf Naor  jhayes@srhlawfirm.com, roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;jhayesecf@gmail.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, nick@ronaldrichards.com

Nathan F Smith on behalf of Creditor East West Bank
nathan@mclaw.org, CACD_ECF@mclaw.org

**2.    SERVED BY UNITED STATES MAIL:** On 4/11/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

***<u>BANKRUPTCY COURT</u>***
***Hon. Judge Maureen A. Tighe***
***21041 Burbank Blvd., Crtrm 302***
***Woodland Hills, CA 91367***

**I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.**

**4/11/2017**
_____          _____
                                                                                              *MATTHEW ABBASI, ESQ.*

# EXHIBIT "A"



**ABBASI LAW CORPORATION**
**8889 WEST OLYMPIC BOULEVARD, SUITE 240**
**BEVERLY HILLS, CALIFORNIA 90211**
**TELEPHONE: (310) 358-9341**
**FACSIMILE: (888) 709-5448**
**TAX ID NO. 94-3460767**

April 11, 2017
Invoice #: 1459

Tul Investments, Inc.
17340 Magnolia Blvd
Encino, California  91316

| Client | Date | Matter | Staff | Description | Hours | Rate | Total |
|--------|------|--------|-------|-------------|-------|------|-------|
| Tul Investments, Inc. | 10/1/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Payment<br>Credited from remainder of $8000 check paid to REM, LLC for legal services. | | | ($4,448.00) |
| Tul Investments, Inc. | 10/2/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Meeting<br>With Yuval Stelmach re New Filing, Prior Filing, Goals, potential problems, accounting, and preparation of new petition. | 1.50 | $350.00 | $525.00 |
| Tul Investments, Inc. | 10/3/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Chapter 11 Filing Fee | | 1 @ $1,717.00 | $1,717.00 |
| Tul Investments, Inc. | 10/3/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Emergency Chapter 11 Petition | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 10/11/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Debtor's 7-Day Package with initial disclosures. | 2.00 | $350.00 | $700.00 |
| Tul Investments, Inc. | 10/12/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Application to Employ ALC. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 10/15/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Letter to counsel for Golden West re: Demand for Turnover of Estate Funds and Violation of Stay. | 0.50 | $350.00 | $175.00 |
| Tul Investments, Inc. | 10/17/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Finalize all petition documents, and schedules and file the same to complete petition. | 2.00 | $350.00 | $700.00 |
| Tul Investments, Inc. | 10/18/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Letter to all Parties re: Debtor's BK and payment of income to Debtor's DIP Account. | 0.50 | $350.00 | $175.00 |
| Tul Investments, Inc. | 10/20/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Supplemental disclosures to the UST. | 1.50 | $350.00 | $525.00 |

| Client | Date | Matter | Staff | Description | Hours | Rate | Total |
|---|---|---|---|---|---|---|---|
| Tul Investments, Inc. | 10/20/201 | Tul Investments (CHP 11) | Paralegal | Paralegal Prepare binders, templates, summaries, and other case organization to assist with the handling of case. | 3.00 | $50.00 | $150.00 |
| Tul Investments, Inc. | 11/2/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Review and Advise Goldberg's extensive status conference report with all attached documents. | 1.25 | $350.00 | $437.50 |
| Tul Investments, Inc. | 11/4/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Meeting With Yuval Stelmach re: Goldberg's Motion to Dismiss, upcoming meeting of creditors, and upcoming status conference. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 11/7/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Review Disclosures to UST, Case matrices/memos, notes from prior case, and other documents in preparation for attending meeting of creditors. | 1.50 | $350.00 | $525.00 |
| Tul Investments, Inc. | 11/8/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Attend 341 (a) Meeting of Creditors with Client. | 2.00 | $350.00 | $700.00 |
| Tul Investments, Inc. | 11/9/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Monthly Operating Report No. 1. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 11/16/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Notice of Motion and Motion to Impose a Stay; Supporting Declarations and Exhibits; Ex-Parte for Shorten Notice. | 5.00 | $350.00 | $1,750.00 |
| Tul Investments, Inc. | 11/17/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Motion Fee | | 1 @ $176.00 | $176.00 |
| Tul Investments, Inc. | 11/17/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Review and Advise Goldberg's Notice of Examination and Demand for Documents to Chris Comfort. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 11/17/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Review and Advise Goldberg's Opposition to Motion to Stay with supporting papers. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 11/21/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Conference With Yuval Stelmach re: Court's ruling, Contempt proceedings against tenants, and possible Stipulation for Interim Payments to Goldberg. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 11/22/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Stipulation re: payments to Goldberg and stay of collection. | 2.50 | $350.00 | $875.00 |

| Client | Date | Matter | Staff | Description | Hours | Rate | Total |
|--------|------|--------|-------|-------------|-------|------|-------|
| Tul Investments, Inc. | 11/23/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Conference<br>With Yuval Stelmach re: upcoming Initial Status Conference and Status Report. | 0.50 | $350.00 | $175.00 |
| Tul Investments, Inc. | 11/23/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Initial Status Conference Report. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 11/28/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Revise and Finalize Stipulation with Goldberg re payment and stay of collection. | 0.75 | $350.00 | $262.50 |
| Tul Investments, Inc. | 12/1/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Attend<br>Initial Status Conference with Client. | 1.50 | $350.00 | $525.00 |
| Tul Investments, Inc. | 12/5/2016 | Tul Investments (CHP 11) | Paralegal | Paralegal<br>Matrices and excel sheets to assist with handling of the case. | 3.00 | $50.00 | $150.00 |
| Tul Investments, Inc. | 12/6/2016 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Notice of Claims Bar Date with Service Per Court Order. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 12/15/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Application for Employment of Chris Comfort with all supporting papers. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 12/15/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Letter to Counsel for GW Re Demand for Accounting and Turn Over of Funds. | 0.50 | $350.00 | $175.00 |
| Tul Investments, Inc. | 12/15/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Monthly Operating Report No. 2. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 12/20/201 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Final Demand Letter to Golden West Re: Accounting, Turn-Over of Funds, and further handling. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 1/19/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Monthly Operating Report No. 3. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 1/23/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Initial Draft of Disclosure Statement with two (2) supporting declarations. | 5.00 | $350.00 | $1,750.00 |
| Tul Investments, Inc. | 1/24/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Review and Advise<br>Goldberg's Notice of Motion and Motion to Dismiss with supporting papers. | 1.50 | $350.00 | $525.00 |
| Tul Investments, Inc. | 1/25/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation<br>Revise/Amend Disclosure Statement. | 2.50 | $350.00 | $875.00 |
| Tul Investments, Inc. | 1/26/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Conference<br>With Chris Comfort re: property valuations and the basis for estimates. | 0.50 | $350.00 | $175.00 |

| Client | Date | Matter | Staff | Description | Hours | Rate | Total |
|---|---|---|---|---|---|---|---|
| Tul Investments, Inc. | 1/27/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Declaration of Chris Comfort with BPO valuations for 4 properties. | 1.50 | $350.00 | $525.00 |
| Tul Investments, Inc. | 1/27/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Final Draft of Disclosure Statement with Declaration of Matthew Abbasi and Yuval Stelmach. | 4.00 | $350.00 | $1,400.00 |
| Tul Investments, Inc. | 2/6/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Conference With Bill Malcolm counsel for East West Bank re: Proof of Claim, Debtor's Plan, and facts of case. | 0.75 | $350.00 | $262.50 |
| Tul Investments, Inc. | 2/13/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Ex-Parte Application, Memorandum of Points and Authorities, Supporting Declarations, and proposed Order for upcoming hearing in LASC to quash contempt hearing against tenants. | 4.00 | $350.00 | $1,400.00 |
| Tul Investments, Inc. | 2/14/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Attend Ex-Parte Hearing in LASC with Judge Lipid to seek an order to quash contempt order to avoid disruption of Debtor's income. | 2.00 | $350.00 | $700.00 |
| Tul Investments, Inc. | 2/14/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Filing Fees Ex-Parte Fees | | 1 @ $60.00 | $60.00 |
| Tul Investments, Inc. | 2/15/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Notice of Ruling for Ex-Parte Hearing. | 0.75 | $350.00 | $262.50 |
| Tul Investments, Inc. | 3/8/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Notice of Hearing on Approval of Debtor's Disclosure Statement. | 0.50 | $350.00 | $175.00 |
| Tul Investments, Inc. | 3/8/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Stipulation, proposed Order, and notice of lodgment to Continue Hearings | 0.75 | $350.00 | $262.50 |
| Tul Investments, Inc. | 3/11/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Review and Analyze US Trustee's Objection to Proposed Disclosure Statement and Plan. | 2.50 | $350.00 | $875.00 |
| Tul Investments, Inc. | 3/21/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Monthly Operating Report No. 4. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 3/22/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Declaration of Yuval Stelmach re: Opposition to Goldberg's Motion to Dismiss. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 3/22/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Opposition to Goldberg's Motion to Dismiss. | 3.50 | $350.00 | $1,225.00 |

| Client | Date | Matter | | Description | Hours | Rate | Total |
|--------|------|--------|---|-------------|-------|------|-------|
| Tul Investments, Inc. | 3/22/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Review and Analyze EWB's Objection and Opposition to Disclosure Statement and Plan. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 3/29/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Amended Declaration of Yuval Stelmach in support of Amended Disclosure Statement and Plan. | 1.50 | $350.00 | $525.00 |
| Tul Investments, Inc. | 3/29/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Prepare declaration of Rea Stelmach per discussions with Rea. | 0.50 | $350.00 | $175.00 |
| Tul Investments, Inc. | 3/30/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation First Amended Disclosure Statement and First Amended Plan. | 4.00 | $350.00 | $1,400.00 |
| Tul Investments, Inc. | 3/31/2017 | Tul Investments (CHP 11) | Paralegal | Messenger First Amended Disclosure and Plan to Judge Tighe. | | 1 @ $75.00 | $75.00 |
| Tul Investments, Inc. | 4/4/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Review and Advise Court's extensive Tentative Ruling and discussed the same with Client in preparation for attending hearing. | 2.00 | $350.00 | $700.00 |
| Tul Investments, Inc. | 4/5/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Attend Hearings on Goldberg's Motion to Dismiss, status conference, and approval of disclosure statement. | 1.00 | $350.00 | $350.00 |
| Tul Investments, Inc. | 4/5/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Attend Post-Hearing Meeting with Counsel re: Settlement of Goldberg Claim. | 0.50 | $350.00 | $175.00 |
| Tul Investments, Inc. | 4/6/2017 | Tul Investments (CHP 11) | Paralegal | Mailing Costs US Mail and Federal Express | | | $325.00 |
| Tul Investments, Inc. | 4/6/2017 | Tul Investments (CHP 11) | Paralegal | Reproduction Costs | | 3800 @ $0.10 | $380.00 |
| Tul Investments, Inc. | 4/10/2017 | Tul Investments (CHP 11) | Matthew Abbasi, Esq. | Preparation Notice of Application and Application for ALC's Fees with Supporting Declarations and Exhibits. | 3.00 | $350.00 | $1,050.00 |
| | | | | **Amount Due** | **87.75** | | **$27,197.50** |

1 | MATTHEW ABBASI, ESQ.; SBN 215030
**ABBASI LAW CORPORATION**
2 | 8889 WEST OLYMPIC BOULEVARD, SUITE 240
BEVERLY HILLS, CALIFORNIA 90211
3 | TELEPHONE: (310) 358-9341
FACSIMILE:   (888) 709-5448
4 |
ATTORNEY FOR DEBTOR, AND DEBTOR
5 | -IN-POSSESSION, TUL INVESTMENTS, INC.

6

7 | **UNITED STATES BANKRUPTCY COURT**

8 | **CENTRAL DISTRICT OF CALIFORNIA**

9 | **SAN FERNANDO DIVISION**

10

11

12 | In re:  | **Case No.: 1:16-bk-12869-MT**

13 | | **Chapter 11 Proceedings**

14 | TUL INVESTMENTS, INC. | **DECLARATION OF YUVAL STELMACH IN SUPPORT OF ABBASI LAW CORPORATION'S APPLICATION FOR APPROVAL OF FEES AND REIMBURSEMENT OF EXPENSES**

15 |

16 |

17 | Debtor and Debtor in Possession.

18

19

20 | **DECLARATION OF YUVAL STELMACH**

21 | I, **YUVAL STELMACH**, declare:

22 | I am over the age of eighteen (18) years old, and if called upon to testify I could and would

23 | do so competently. I have personal knowledge of the facts set forth herein, and based on that

24 | personal knowledge, I assert the following facts as true and correct to the best of my knowledge:

25 | 1.    I am the President of the Debtor and the Debtor-in-Possession, (the "Debtor"), in

26 | the herein Chapter 11 Reorganization case and am fully authorized to submit the herein

27 | Declaration. As the Debtor's President, I personally caused the Debtor to file the herein

28 | voluntarily Chapter 11 Bankruptcy case on **October 3, 2016**. Since the commencement of the

1

DECLARATION OF YUVAL STELMACH IN SUPPORT OF ABBASI LAW CORPORATION'S APPLICATION FOR APPROVAL OF FEES AND REIMBURSEMENT OF EXPENSES

bankruptcy case, Debtor has continued to manage his own affairs as a Debtor-in-Possession ("DIP") pursuant to §§1107 and 1108 of the Bankruptcy Code.

2.      I am submitting this Declaration in support of ALC's Application for the Approval of Fees and Reimbursement of Expenses (the "Application") for services rendered and expenses incurred for the period of **October 3, 2016** to **April 10, 2017** (the "Covered Period") pursuant to 11 U.S.C. Sections 327, 330, and 331.

3.      The Debtor has fully complied with all of the requirements of the United States Trustee's Office and the 341 (a) Meeting of Creditors was held and concluded on **November 8, 2016**. The Debtor has filed its October, November, and December 2016 Monthly Operating Reports.

4.      The Debtor has no secured creditors and no creditor has a security claim on its income. Therefore, the Debtor has not filed a Motion seeking authorizing for the use of cash collateral.

## DEBTOR'S DISPUTED OWNERSHIP

5.      The Debtor has two (2) unresolved ownership dispute which the Debtor does <u>not</u> seek to resolve via its Plan. Based on the books and records of the Debtor, the following is a listing of the Debtor's disputed ownership at the filing of the Petition:

- Shlomo Goldberg ("Goldberg") owns 7.5% of the Debtor.
- Estate of Lea Goldberg (Shlomo Goldberg's deceased wife) owns 7.5% of the Debtor.
- Yuval and Tally Stelmach ("Stelmach") own the remaining 85% of the Debtor.

6.      As it stands, the ownership stake of Lea Goldberg is in dispute and the subject of a pending contested Will action in the State of Israel. However, the Debtor's Plan did not seek to resolve this dispute in this case.

## DEBTOR'S ESTATE

7.      The Debtor is a real estate investment company that owns and manages its interest in other entities. The Debtor has listed the income generated by all of its holdings in the Petition and in the herein Statement. As set out in the Petition, the Debtor owns 50% of a company called GOLDEN WEST REAL ESTATE, LLC ("GW"); and 50% of a company called

2

TUL ANTHONY, LTD ("Tul Anthony"). In turn, GW and Tul Anthony own the following real properties:

- GW owns 100% of a commercial property located at 1880 S. Western Ave., Los Angeles California ("Western Property").

- Tul Anthony owns 14% of an entity named BALBOA PLAZA, LLC ("BP") which owns a commercial property located at 17050 Chatsworth Street, Grenada Hills, California ("Chatsworth Property").

- Tul Anthony owns 100% of an entity named TUL RESEDA, LP ("Tul Reseda") which owns a commercial property located at 7126 Reseda Blvd., Reseda, California ("Reseda Property").

8.     The Debtor does not directly own any real property but the Debtor is the 100% equitable owner of a commercial property located at 101-107 Barrington Way, Brentwood, California (the "Brentwood Property"). The Brentwood Property is currently legally owned by the Stelmach Family 2002 Living Trust ("SFT") but the true and correct owner of this property has always been the Debtor.

## DEBTOR'S CREDITORS

9.     The Court set the Claims Bar Date for this matter to **February 7, 2017** and the majority but not all of the Debtor's creditors have filed claims. As listed in the Petition, one of the Debtor's biggest Creditor is, EAST WEST BANK ("EWB"). As it stands, the Debtor owes approximately **$1,369,921.38** (unsecured) to EWB under Account Number ending with 00001. This debt was incurred jointly by the Debtor and I but the proceeds were used by the Debtor to buy property and to fund its operations. Specifically, the monies charged on this Credit Line was used to pay to pay-off loans for Estate property (Reseda Property) and used as direct loans to the Debtor.

10.     On November 28, 2016, Shlomo Goldberg filed Proof of Claim No. 2 ("POC-2") for the alleged sum of $547,022.26. POC-2 is based solely on a June 26, 2013 State Court Judgment from a matter entitled Shlomo Goldberg v. Yuval Stelmach et al. with a Trial Court Case No. of LC075563 (hereinafter the "State Court Judgment"). The State Court Judgment was

3

1  Appealed unsuccessfully.

2      11.    As it stands, the Debtor is involved in a state court action entitled <u>Tul investments,</u>

3  <u>Inc. v. ABMS, LLC</u> with Case No. BC636609 to dissolve GW.

4                                    **CASE PROFESSIONALS**

5      12.    In order to address my circumstances and challenges, I retained the law firm of

6  Abbasi Law Corporation and Matthew Abbasi, Esq. (collectively "ALC") to serve as my insolvency

7  counsel in this matter. I believe that ALC was fully qualified to represent me in this chapter 11

8  bankruptcy case and represented me adequately in this matter.

9      13.    As per the retainer agreement I entered into with ALC, all legal fees and costs for

10  this case were to be paid by the Debtor. If the Debtor could not pay, I had agreed to make the

11  payments.

12      14.    As it stands, I have  retained real estate broker Chris Comfort to provide the

13  Debtor with property valuations for the Disclosure Statement and Plan.

14                                **FEE AND COST ACCOUNTING**

15      15.    As per the retainer agreement with ALC, the Debtor agreed to pay ALC based on

16  discounted hourly rate of **$350.00**; Paralegal hourly rate of $50.00; and Law Clerk hourly rate of

17  $25.00 plus the payment of all costs incurred in the administration of this case.

18      16.    I provided a retainer deposit of **$4,448.00** (the "Retainer Deposit") to ALC for the

19  filing and handling of this case. However, the retainer deposit has been fully applied and

20  exhausted. As detailed in **Exhibit "A"** to the declaration of Matthew Abbasi, ALC incurred

21  **$2,733.00** for filing fees/costs and incurred **$24,464.50** for professional fees. Therefore, ALC is

22  owed **$27,197.50** (the "Outstanding Sum") for professionals fees and costs <u>after</u> the application of

23  the entire Retainer Deposit.

24      17.    I have reviewed ALC's billing and believe ALC's billing is correct and accurate.

25  Further, I have agreed to make regular payments to repay the remaining amount owed via a

26  voluntary payment plan with ALC.

27      18.    Overall, through the action of ALC, I was able to save the Debtor from several

28  lawsuits from the tenants of the Brentwood Property. Also, through ALC's efforts, the Debtor was

4

able to recover $50,000 from GW which was deposited in the DIP account. Therefore, I am satisfied with the legal services provided by ALC and believe that ALC's fees were fair and reasonable.

19.     For the reasons stated herein, I respectfully request this Court to approve ALC's Application for the Approval of Fees and Costs.

*(remainder of page intentionally left blank)*

5

1        I declare under penalty of perjury under the laws of the State of California and the United

2    States of America that the foregoing is true and correct to the best of my knowledge. This

3    Declaration was executed on **April 10, 2017** in Los Angeles, California.

4

5                              YUVAL STELMACH, Declarant

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6