**FILED & ENTERED**

MAY 03 2017

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** Gonzalez **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Tul Investments, Inc.<br><br><br><br>Debtor(s). | Case No.: 1:16-bk-12869-MT<br><br>CHAPTER 11<br><br>**NOTICE OF TENTATIVE RULING RE MOTION TO DISMISS CHAPTER 11 CASE**<br><br>Date:   April 5, 2017<br>Time:   9:30 a.m.<br>Courtroom:  302 |

At the above date and time, the Court held a hearing on the Motion to Dismiss Chapter 11 Case (the "Motion to Dismiss"), filed by creditor Shlomo Goldberg. Appearances are as noted on the record for the hearing. At the hearing, the Court adopted its tentative ruling on the Motion to Dismiss. A copy of the Court's tentative ruling is attached to this cover page.

//
//
//
//
//

-1-

Tul Investments, Inc. ("Debtor") is a real estate investment company. It invests in entities which own commercial properties. The equity structure and the properties it holds are as follows:

- 50% of Golden West Real Estate, LLC. ("Golden West")
  - Golden West wholly owns a commercial property located at 1880 S. Western Ave., Los Angeles CA ("Western Property").
- 50% of Tul Anthony, LTD. ("Tul Anthony").
  - Tul Anthony wholly owns Tul Reseda, LP. ("Tul Reseda"), which owns a commercial property located at 7126 Reseda Blvd., Reseda CA ("Reseda Property").
  - Tul Anthony also owns 14% of Balboa Plaza, LLC. ("BP") which owns a commercial property located at 17050 Chatsworth St., Granada Hills, CA ("Chatsworth Property").

Debtor also claims an "equitable ownership" in a commercial property located at 101-107 Barrington Way, Brentwood, CA (the "Barrington Property") on the basis that it is the former owner of the property. The actual on title owner is the Stelmach Family 2002 Living Trust (the "Stelmach Family Trust").

Shlomo Goldberg ("Goldberg" or "Movant") is the father-in-law of Debtor's principal, Yuval Stelmach. Goldberg and the Estate of Lea Goldberg, Movant's deceased wife, each own a 7.5% equity interest. Yuval and his wife own the remaining 85% of the company. On February 13, 2015, Goldberg filed Proof of Claim No. 3-1 in the amount of $547,022.26.[1] The claim is based on a June 26, 2013 state court judgment (the "Judgment") for breach of fiduciary obligation against Debtor, Stelmach, and REM, LLC, jointly and severally. See Proof of Claim 3-1; Shlomo Goldberg v. Yuval Stelmach et al., Case No. LC075536.

Debtor has one previous case filed on November 25, 2014. In re Tul Investments, Inc., 1:14-bk-15294-MT. Debtor failed to propose an adequate disclosure statement despite two attempts to do so. See Order Denying Adequacy of Debtor's Disclosure Statement, ECF No. 114; Order Denying Approval of First Amended Disclosure Statement, ECF No. 138. On March 24, 2016, the case was dismissed with a 180-day bar.

On October 3, 2016, two weeks after the end of the 180-day bar, Debtor filed the instant case. On January 25, 2017, Gil Naor and Assaf Naor filed unsecured claims (the "Naor Claims") for $1,000,000 and $600,000, respectively. See Proof of Claim No. 7; Proof of Claim No. 8. The two claims were absent from Debtor's previous case.

On December 1, 2016, at the Initial Status Conference, the Court set January 20, 2017 as the deadline to file a disclosure statement. On January 24, 2017, Goldberg filed a Motion to Dismiss Debtor (the "Motion to Dismiss"). ECF No. 74. On January 27, 2017, Debtor filed its first Disclosure Statement. ECF No. 77. Without adjudication on the merits of the first

---

[1] The state court judgment was entered in favor of Movant in the principal amount of $362,788.50 and pre-judgment interest in the amount of $184,233.76.

Disclosure Statement, Debtor filed its Amended Disclosure Statement and Amended Plan of Reorganization on February 24, 2017. ECF No. 86, 87.

**Standard**

A request to dismiss a chapter 11 case is prosecuted under § 1112. In pertinent part, that section provides:

> (b)(1)  Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. §1112(b)(1).

Pursuant to § 1112(b), courts have dismissed cases filed for a variety of tactical reasons unrelated to reorganization. While the case law refers to these dismissals as dismissals for "bad faith" filing, it is probably more accurate in light of the precise language of § 1112(b) to call them dismissals "for cause."  Marsch, 36 F. 3d at 828.

The bankruptcy court may dismiss a Chapter 11 case "for cause" pursuant to section 1112(b). For purposes of subsection 1112(b)(4), the term "cause" includes

> (A)  substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B)  gross mismanagement of the estate;
> (C)  failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D)  unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E)  failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>
> …
>
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court.

11 U.S.C. §1112(b)(4)(A-J).

In general terms, "cause" under Section 1112(b) applies at various stages in the case to test whether the benefits of reorganization are likely to be achieved within a reasonable amount of time and in a manner that is consistent with the requirements and restrictions of the Code.

Thus, the cause standard continually measures the value of maintaining the process, and also polices the diligence of the debtor or other plan proponent to ensure that the process is proceeding with all deliberate speed and in accordance with the requirements of applicable law. The basic focus of this section is to weed out unlikely reorganization prospects even though the debtor's intentions at the time of the filing may be strictly honorable. As the Second Circuit stated: "The purpose of § 1112(b) is not to test a debtor's good faith; it is to provide relief where the debtor's efforts, however heroic, have proven inadequate to the task of reorganizing his affairs effectively within a reasonable amount of time."

Although § 1112(b) does not explicitly require that cases be filed in "good faith," courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal. In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994). "The existence of good faith depends on an amalgam of factors and not upon a specific fact." In re Arnold, 806 F.2d 937, 939 (9th Cir.1986).

Instead of focusing on the debtor's prospects of reorganization, the good faith standard focuses directly on the subjective intentions of the debtor and proper use of the bankruptcy system as a general system of equity and is designed to prevent "abuse of the bankruptcy process, or the rights of others, involv[ing] conduct or situations only peripherally related to the economic interplay between the debtor and the creditor community." As one court has explained: "Generally, the facts surrounding good faith will be determined by circumstantial evidence. It is unlikely that a debtor will ever acknowledge its own bad faith; therefore, one will reach conclusions about the party's intent from the totality of the circumstances surrounding the filing of the case.

7 Collier on Bankruptcy P 1112.07[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

**Discussion**

Movant argues that dismissal is warranted given Debtor's previous filing, its inability to reorganize, and facts representing an apparent scheme to avoid paying the Judgment.

I.      **Failure to File a Disclosure Statement Under 11 U.S.C. §1112(b)(4)(J)**

At the last hearing, the Court set January 20, 2017 as the deadline to file a disclosure statement. Debtor was ordered to lodge a scheduling order to that effect, but it neglected to do so. The disclosure statement was then filed seven days after the deadline on January 27, 2017. ECF No. 77. The failure to abide by the Court's strict cutoff date is considered cause to dismiss a case for "failure to comply with an order of the court" under 11 U.S.C. §1112(b)(4)(G). This is even more egregious in the context of an order establishing a disclosure statement deadline: the Code explicitly states that "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court" is "cause" to dismiss under 11 U.S.C. §1112(b)(4)(J).

II.     **Substantial Or Continuing Loss To Or Diminution Of The Estate And The Absence Of A Reasonable Likelihood Of Rehabilitation under 11 U.S.C. §1112(b)(4)(A)**

Debtor's ability to reorganize is highly suspect. Debtor's previous case was dismissed with a 180-day bar at the hearing on the First Amended Disclosure Statement (the "FADS"). In re Tul Investments, 14-bk-15294-MT, ECF No. 136, 138. The Court concluded that the FADS lacked adequate information for an enumerated number of reasons in its adopted tentative ruling, including: lack of a filed plan, violation of the 11 U.S.C. §524(e) injunction provision, lack of a liquidation analysis, failure to provide for United States Trustee fees, failure to attach relevant financial statements, and most relevant to the motion at hand – unfair discrimination of Shlomo Goldberg's judgment claim in violation of 11 U.S.C. §1129(b). Id. at 139. Specifically, Debtor proposed to pay only 50% of Goldberg's claim, but proposed to pay another unsecured creditor, East West Bank, 100% of its claim. Id. at ECF No. 133, 4:13-16.

The Amended Disclosure Statement is again lacking in substance or a real strategy to pay its creditors. Perhaps conceding that it is indeed insufficient, Debtor asserts that "in order to resolve, the UST's objection, the Debtor will be filing an Amended Disclosure and Plan by March 27, 2017." Debtor's Opposition to Creditor's Motion to Dismiss (the "Opposition"), 2:13-15. Debtor not only failed to file a disclosure statement by the Court's ordered deadline; as explained in more detail in the Court's tentative ruling on the Debtor's Disclosure Statement, it filed a deficient disclosure statement on its second try. Now facing meritorious objections from the United States Trustee, it requests a third swing at proposing an adequate disclosure statement. This is not the purpose of chapter 11; one cannot enjoy the protection of the automatic stay without showing the ability to formulate a plan.

It has been five months since this relatively simple case was filed. The last case lasted sixteen months. Yet Debtor can't seem to meet clear deadlines or file a disclosure statement and plan without major issues.

Debtor argues against dismissal, averring that liquidation of the assets is not in the best interest of creditors. It points to attorney's fees to prosecute dissolution actions, real estate broker fees to sell the properties, and payment of taxes from the sale of properties. Debtor also argues against conversion because Debtor does not own any properties directly and that shareholders and managers of the entities who are the title owners may oppose a sale.

Contrary to Debtor's argument, dismissal or conversion would serve the best interest of creditors despite the administrative and/or dissolution expenses. Debtor values each of the properties in which it asserts an equity interest at $3.45 M (the Reseda Property), $5 million (the Western Property), and $10 million (the Chatsworth Property). Declaration of Chris Comfort re: Valuation of Property, 2:9-26. While not the title holder, Debtor asserts an "equitable interest" in the Barrington Property, valued at $2.1 million. Id. at 2:3-9. Taking into account Debtor's equity interest in each of respective holding companies and giving Debtor the benefit of the doubt as to its proffered "equitable interest" in the Barrington Property, Debtor has $7,025,000 of equity in the four properties. This is more than enough is pay off all unsecured creditors. See Amended Disclosure Statement, 16-17 (the total amount of claims provided in the Amended Plan amounts to only $4,354,443.64).[2]

As this case stays in limbo, administrative fees continue to compound. Per the Amended Disclosure Statement, Debtor has incurred an estimated $20,000 in legal fees and costs thus far.

---

[2] This calculation gives Debtor the benefit of the doubt as to the validity of the East West Bank claim and the Naor claims are valid.

United States Trustee fees are not listed, but presumably they are continuing to accrue at the normal quarterly rate. Debtor has not shown an ability to reorganize; sufficient equity is leftover where dismissal or conversion is warranted.

### III. Bad faith

The circumstances surrounding Debtor's filing suggest bad faith. Courts have determined that dismissal is also appropriate where the debtor is determined to be proceeding in chapter 11 in bad faith. 7 Collier on Bankruptcy P 1112.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Collier on Bankruptcy explains the distinction between dismissal for cause under section 1112(b) and dismissal for lack of good faith:

> In contrast to testing the debtor's prospects of reorganization, the good faith standard focuses directly on the subjective intentions of the debtor and proper use of the bankruptcy system as a general system of equity and is designed to prevent "abuse of the bankruptcy process, or the rights of others, involv[ing] conduct or situations only peripherally related to the economic interplay between the debtor and the creditor community." As one court has explained: "Generally, the facts surrounding good faith will be determined by circumstantial evidence. It is unlikely that a debtor will ever acknowledge its own bad faith; therefore, one will reach conclusions about the party's intent from the totality of the circumstances surrounding the filing of the case.

Id. at P 1112.07[1].

The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis. Arnold, 806 F.2d at 939.

Bad faith emanates throughout this case. Debtor does not dispute Movant's claims that Stelmach violated the rent assignment orders by advising the tenants of the Brentwood Property to disobey the order and pay Stelmach directly. Debtor also does not dispute that the tenants are actually Stelmach's children.

A number of questionable claims favorably treated in the Amended Disclosure Statement suggest an abuse of the bankruptcy process to deter and harass creditors. Assaf Noar and Gil Noar, who filed separate unsecured claims, were noticeably absent from Debtor's previous case. See Proof of Claim No. 7-1, 8-1. Adding to the suspicion, neither creditor attached evidence to substantiate the validity and amount of the claims. Debtor provides no indication that these debts arose in the 180-day period between filings.

East West Bank is separately treated in Class 3 in Debtor's Amended Disclosure Statement notwithstanding the fact that it is not a creditor in Debtor's estate; instead the obligors on the loan are Debtor's insiders – Yuval and Tally Stelmach. The fact was revealed by East West Bank in its limited opposition. Debtor therefore has been using estate assets to pay a non-creditor for the benefit of its insiders.

This filing appears to be a part of a pattern of fraudulent cases. In addition to Debtor's previous case which was dismissed with a 180-day bar, a related case in front of the Honorable Julia Brand – In re REM, LLC., 2:16-bk-18928-WB – was filed on July 5, 2016, and dismissed pursuant to 11 U.S.C. §1112(b)(1) on November 17, 2016.  The debtor was also represented by Mathew Abbasi, Esq., and Yuval Stelmach was also authorized signatory in the petition. Id. at ECF No. 1, 4.  REM, LLC. is also a co-judgment creditor in Shlomo Goldberg v. Yuval Stelmach et al., Case No. LC075536.

This leads to Shlomo Goldberg's judgment claim. Goldberg, the father-in-law of Debtor's principal, Yuval Stelmach, has a claim based on a state court judgment for breach of fiduciary obligation against Debtor, Stelmach, and REM, LLC, jointly and severally, in the amount of $547,022.26. See Proof of Claim 3-1; Shlomo Goldberg v. Yuval Stelmach et al., Case No. LC075536.  Goldberg claims that the case was filed for the purpose of avoiding the Judgment.

The scenario here is similar to Computer Task Group, Inc. v. Brotby (In re Brotby), 303 B.R. 177 (B.A.P. 9th Cir. 2003).  There, the debtor also filed his petition not long after a sizable money judgment was entered against him in district court. Id. at 198.  In ultimately reversing and remanding the bankruptcy court on the issue of dismissal for bad faith, the Bankruptcy Appellate Panel (the "BAP") considered whether Debtor had the assets to satisfy the judgment or at least pay for an appeal bond. Id (comparing the case to Marsh, 36 F.3d at 829)("it is not the purpose of the bankruptcy code to allow a debtor to file Chapter 11 bankruptcy to avoid the posting of an appeal bond where the debtor has the clear ability to satisfy the judgment in full from nonbusiness assets.").

Here, to date, Goldberg's entitlement to the Judgment has been delayed for over three-and-a-half years. Proof of Claim 3- 1, Ex. 1 (The Judgment was entered by the State Court on June 26, 2013).  Despite listing only $1,500 in assets for "minor office equipment, filing cabinet, and computer," the Amended Disclosure Statement reveals that Debtor has equity interests in four real properties, which according to Debtor's own appraiser, amount to $7,025,000 million in value for Debtor's estate. Schedule A/B; Declaration of Chris Comfort re: Valuation of Property, 2:9-26. Despite purportedly having zero dollars cash on hand on the petition date, Debtor now proffers that it has $64,174.10 in cash on hand. Amended Disclosure Statement, 15:23-24.  Like the debtor in Brotby, Debtor had the ability to pay the Judgment or post an appellate bond, but instead filed this bankruptcy as a way to deter and harass Goldberg.

//

//

//

//

//

//

//

   The bankruptcy process is reserved for the honest but unfortunate debtor; it is not for the purpose of protecting the wealth of its insiders. Debtor's failure to file an acceptable disclosure statement on time, its suspicious treatment of unsecured creditors, and its case history surrounding its proposed plan suffice as "cause" to dismiss under 11 U.S.C. §1112(b).  Debtor's history of related case – affecting the subject property, involving Stelmach as the principal, and Abbasi as the attorney – connotes a web of interrelated cases filed for the purpose to hinder and delay creditors, rather than to effectuate a realizable plan of reorganization.

Motion to Dismiss GRANTED with 180-Day Bar.

###

Date: May 3, 2017

Maureen A. Tighe
United States Bankruptcy Judge